**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**
_____

ROY MUNOZ,

        Plaintiff,

        vs.                            Civ. No. 17-881 WJ/SCY

FCA US LLC (FIAT CHRYSLER
AUTOMOBILES US LLC, f/d/b/a
CHRYSLER/DODGE) and JOHN DOE
CORPORATIONS,
Defendants.

        Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART**
**DEFENDANT'S MOTION TO EXCLUDE IMPERMISIBLE EXPERT TESTIMONY**
**AND OPINION TESTIMONY OF DR. CANDYCE TART AND DR. RICHARD LANZI**

        THIS MATTER comes before the Court upon a Motion to Exclude Impermissible Expert Testimony and Opinion Testimony of Dr. Candyce Tart and Dr. Richard Lanzi filed by Defendant FCA US LLC ("FCA US" or "Defendant") on June 19, 2020 (**Doc. 185**).  Having reviewed the parties' briefing and the applicable law, the Court grants in part and denies in part Defendant's motion as set forth below.

**BACKGROUND**

        This lawsuit is a products liability case arising from the apparent failure of an airbag to deploy during a car accident while Plaintiff was working as an employee of the United States Forest Service. The case was filed on August 25, 2017. Plaintiff claims that he has suffered serious personal injuries, has lost his job, has incurred permanent disfigurement and will incur in the future, medical and medically related expenses. In the instant motion, Defendant seeks to exclude

what it alleges is certain impermissible expert and opinion testimony of two treating doctors with

the Veteran's Administration ("VA"), Dr. Candyce Tart and Dr. Richard Lanzi ("VA doctors").

Defendant opposed depositions of these providers on the grounds that Plaintiff is

attempting to elicit impermissible expert and opinion testimony from these doctors, which is

expressly prohibited under the federal *Touhy* regulations, 38 C.F.R. § 14.800 through 14.810.[1]

Following a motions hearing before United States Magistrate Judge Steven C. Yarbrough

("motions hearing") the Court issued subpoenas authorizing the depositions to go forward.  The

Court limited the depositions to treating physician testimony only and required that the depositions

must be conducted in conformance with the *Touhy* regulations. Doc. No. 168 at p. 1-2 (Clerk's

Min.); Doc. 188-1, p. 6:5-11.

Defendant contends that the VA doctors' testimony conflicts with the *Touhy* regulations

and this Court's Order forbidding expert and/or opinion testimony from the doctors and must be

excluded.[2] In addition, Defendant argues that these providers may not offer expert and/or opinion

testimony regarding issues for which they are not  qualified. Plaintiff contends that the testimony

comes within the restrictions of the *Touhy* regulations and the doctors' qualifications.

Plaintiff raises a threshold matter, urging the Court to deny Defendant's motion solely

because Defendant made no effort to comply with the requirements of D.N.M.LR - Civ. 7.1(a)

which requires that counsel determine whether a motion is opposed and include a recitation in the

---

[1] In *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), the United States Supreme Court held that the head of a federal agency may make the determination on his/her sole authority to produce documents and authorize employee's testimony in response to a subpoena or other demand for information.  The statutory authority for the regulations is 5 U.S.C. §301 ("Departmental Regulations"), which allows the head of an Executive department to prescribe regulations for the government of his department, the conduct of its employees and the use of its records.
[2] Judge Yarbrough issued an Order (Doc. 174) regarding the issuance of subpoenas, but the Order did not address the type of questions that were permissible at the depositions.  The Court therefore looks to the transcript of the hearing on the Motion for Issuance of Subpoenas (Doc. 174) for that information.  The Court assumes that the parties' use of "Order" throughout the briefs to refer to Judge Yarbrough's rulings made during the hearing, and the Court also adopts that term for those purposes here.

motion of a good-faith request for concurrence.  Defendant claims that it filed the instant motion "under the genuine belief that Plaintiff opposed the relief sought in the motion."  Doc. 198 at 1.  That may be, but Defendant's "genuine belief" does not satisfy the requirements of the local rule, which was promulgated for a reason.  This lawsuit has proven to be contentiousness on the smallest of details, and this Court simply does not and will not have the time or resources to resolve disputes that could have been even partially resolved before judicial intervention was sought.  The Court is in the practice of striking pleadings that do not comport with local rules, and counsel is advised here that it will continue to do so in the future should there be cause.

## DISCUSSION

The *Touhy* regulations provide that VA personnel are forbidden from offering expert and/or opinion testimony. 38 C.F.R. § 14.808(a) ("VA personnel shall not provide, with or without compensation, **opinion or expert testimony** in any legal proceedings concerning official VA information, subjects or activities, except on behalf of the United States or a party represented by the United States Department of Justice.") (emphasis added).  Thus, the testimony of the VA doctors is limited to their treatment of Plaintiff and their records "based on [their] personal knowledge and observations obtained during [their] course of care and treatment of Plaintiff." *Farris v. Intel Corp.*, 493 F. Supp. 2d 1174, 1180 (D.N.M. 2007).

Of course, any expert or opinion testimony also necessarily implicates the Court's *Daubert* gatekeeping function. *See Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).  The first step the Court must undertake pursuant to this gatekeeping function is determining whether the VA doctors are qualified by "'knowledge, skill, experience, training, or education'" in the particular fields in which they offer their opinions. *Id.* (quoting *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985,

990 (10th Cir. 2006). In regard to this determination, the Court must determine whether the witness's "expertise [is] reasonably related to the issue." *Witherspoon v. Navajo Refining Co.,* LP, No. Civ.03-1160, 2005 WL 5988649 (D.N.M. July 18, 2005) at* 3 (citing *Ralston v. Smith &Nephew Richards,* Inc., 275 F.3d 965, 970 (10th Cir. 2001). In this regard, Defendant contends that the VA doctors are not qualified to offer any opinions about "severe" traumatic brain injury or to offer any opinion regarding Plaintiff's ability to return to work.

## I.    Relevant Law

A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party. *Davoll v. Webb*, 194 F.3d 1116, 1138 (10th Cir. 1999). A treating physician, even when testifying as a lay witness, may state "expert" facts to the jury in order to explain his testimony. *Id.* Treating physicians are therefore exempt from the written report requirement in Rule 26(a)(2) of the Federal Rules of Civil Procedure. *See* Adv. Comm. Notes, par. 2, 1993 Amendments for Rule 26(a)(2); *see Duran v. Home Depot USA, Inc.*, No. CV 13-608 WJ/SCY, 2014 WL 12601509, at *2 (D.N.M. Aug. 13, 2014) (denying defendant's motion to strike expert disclosure for failing to provide written report, citing D.N.M.LR-Civ. 26.3(b); *Montoya v. Sheldon*, 286 F.R.D. 602, 611 (D.N.M. 2012) (citing *Davoll,*194 F.3d at 1138). However, a treating physician cannot provide expert testimony regarding any opinion he formed based upon information learned outside of, and not related to, a patient's treatment. *Farris.*, 493 F. Supp. 2d at 1174.

At the motions hearing, Judge Yarbrough stated that questions to the VA doctors would be proper to the extent that "it's just going to be treating physician testimony," Doc. 188, p. 38:1-5, and that conclusions based on the doctors' observations made during treatment were proper as well. *Id.* However, to the extent that the witness was asked to make "assumptions that relate to the

treatment," such testimony would be impermissible because it "goes beyond treating testimony." *Id.*, p. 12:21-25; 13:1-9.

## II.     Challenged Categories of Testimony

### A.     Dr. Tart

Dr. Tart is a clinical psychologist working in the VA system as the director of the Farmington VA Center, providing both administrative and clinical services. Defendant challenges Dr. Tart's testimony in three areas:

(1) *Return to Work Testimony*: Defendant contends that Dr. Tart may not testify about assessment she made regarding Plaintiff's ability to work because that assessment was not in her medical records.  Defendant also contends that the testimony is impermissible under the *Touhy* regulations and because Dr. Tart does not possess the necessary qualifications to offer such expert or opinion testimony.

(2) *Changes in Plaintiff's mental status:*

Dr. Tart's opined that there was a "significant change" for the worse in Plaintiff's mental status, attributing this change to the motor vehicle accident. Defendant contends that this testimony is impermissible because it is not included in Dr. Tart's medical records and also because it constitutes impermissible expert opinion testimony under the *Touhy* regulations and this Court's Order.

(3) *Plaintiff's "severe" brain injury*:

Dr. Tart originally noted in her records that Plaintiff suffered a "mild" traumatic brain injury but a year later changed the notation to "severe" traumatic brain injury following a hallway conversation with Dr. Lanzi.  Defendant seeks exclusion of this testimony because there is no

reference to that conversation in Dr. Tart's medical records and because admittedly she is not a specialist in the area of brain injury.

B.    Dr. Lanzi

Dr. Lanzi is a medical doctor with the Veterans Administration, specializing in internal medicine and trained in infectious diseases.

*Return to Work Testimony:*  Dr. Lanzi was repeatedly asked about whether Plaintiff could return to work.  Defendant seeks exclusion of any testimony in this category because no return to work assessment exists in his medical records and also because Dr. Lanzi often referred such evaluations to vocational specialists and so is not qualified to make such assessments himself.

Dr. Lanzi was also asked to testify about a letter to the Department of Labor, which contained expert or opinion testimony, that was not part of Plaintiff's medical records. Doc. 185-2, p. 40:5-9. Defendant claims that this testimony should be excluded because any document that is not a medical record of Plaintiff and that contains expert or opinion testimony is not permitted under the *Touhy* regulations and this Court's Order limiting the deposition to treating testimony.

C.    List of Specific Testimony Sought to Be Excluded[3]

Defendant includes a list of the expert and/or opinion testimony that should be excluded by the *Touhy* regulations, by this Court's Order and/or for lack of qualifications under *Daubert*, with references to both depositions which are attached as exhibits (Docs. 185-1 & 185-2):

---

[3] Defendant does not appear to be challenging all the testimony that was given in the two depositions.  The Court will therefore limit its analysis to the testimony specifically listed by Defendant as allegedly improper testimony.

<u>Dr. Tart</u>
- Return to Work Assessment Testimony: Ex. A at p. 17:15-22; p. 26:14-22; p. 41:12-42:2; p. 46:10-25; p. 47:13-23.
- Expert Testimony: Ex. A at p. 40:19-24; p. 52:4-21; p. 83:19-84:1.
- Opinion Testimony and Testimony Outside of Medical Records: Ex. A at p. 26:14-22; p. 40:5-18; p. 46:10-25; p. 47:13-23; p. 52:4-21; p. 53:20-54:22.
- "Severe" Traumatic Brain Injury: Ex. A at p. 25:9-15; p. 30:6-23; p. 35:15-36:20; p. 70:12-71:17; p. 79:20-80:2.

<u>Dr. Lanzi</u>
- Return to Work Assessment Testimony: Ex. B at p. 47:12-16; p. 49:9-50:3; p. 50:17-25; p. 53:23-55:4; p. 55:12-16; p. 95:2-12.
- Expert Testimony Regarding Traumatic Brain Injury: Ex. B at p. 40:5-41:21.
- Opinion Testimony and Testimony Outside of Medical Records: Ex. B at p. 14:23-15:9; p. 34:4-15; p. 39:16-41:21; p. 40:5-41:21; p. 46:2-18; p. 47:12-16; p. 49:9-50:3; p. 50:17-25; p. 53:23-55:4; p. 55:12-16; p. 64:19-65:1; p. 65:18-21; p. 94:5-95-12; p. 97:21-99:1.

## III.    Analysis

The Court finds that certain arguments raised by both parties can be summarily rejected.

### A.    Court's Rejection of Specific Arguments Raised by Parties

The Court rejects the following arguments raised by Defendant:

(1) **Defendant's claim that all of the challenged testimony by Drs. Tart and Lanzi is precluded under the *Touhy* regulations**. The *Touhy* regulations prohibit only *expert* opinions regarding official VA affairs unless the testimony is approved in advance. 22 CFR §14.808(a) and (b)(1). Thus, the regulations do not preclude testimony that comes within the scope of treating physician testimony.

(2) **Defendant's request to exclude any testimony that is not included in the medical records.** There is no legal authority for this—either based on *Touhy*, the Court's Order, the federal rules or in relevant case law. A treating physician may give opinions based on his/her own personal knowledge "of the examination, diagnosis and/or treatment of the patient, without regard to

7

whether the doctor may have expressed that particular opinion in any of the patient's medical records. *See Sellers v. Butler*, No. CIV.A. 02-3055-DJW, 2006 WL 2714274, at *4 (D. Kan. Sept. 22, 2006). All of this testimony may be challenged as to weight if it is inconsistent with the records or conclusory, but it is still proper as treating physician testimony. *See Phillips v. Barnhart*, 357 F.3d 1232 (11th Cir. 2004) (in context of social security case, "good cause" exists not to give opinion of a treating physician substantial or considerable weight exists when the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records).

The Court rejects the following arguments raised by Plaintiff:

(1) **Plaintiff's claims that the VA doctors can testify about future expectations.** Plaintiff contends that Judge Yarbrough ruled that the doctors can offer opinions as to what the patient can expect in the future are allowed if reached in the course of treatment. This misstates the ruling. Judge Yarbrough stated that "the doctor who was treating can only testify as to what the doctor knew or observed in the course of that treatment" and that once one got into "the issue of prognosis and what's the opinion about what's going to happen later," the issue "gets murky." Doc. 188-1, p. 12:21-25:13:1-9. The Court finds that testimony on a patient's future prognosis ventures precariously into the area of *assumptions* about treatment and a patient's status in the *future,* rather than testimony related to observations and assessments made *during* treatment. Such testimony seems more appropriately reserved for expert testimony, and thus is not proper as treating physician testimony.

(2) **Plaintiff's claims that the doctors can testify about the motor vehicle accident causing the trauma.** According to Plaintiff, Judge Yarbrough also ruled at the hearing that it was proper for the VA doctors to testify as to "conclusions made during treatment that injuries are consistent with the trauma from hitting a part of the vehicle." Doc. 188 at 3. This also misstates

the Court's actual ruling.  Judge Yarbrough found that it would be "impermissible" for Dr. Lanzi to opine that Plaintiff's injuries "were caused by his face and body hitting the steering wheel and dashboard" or that Plaintiff's injuries "would not have happened or would have been much less severe if his air bag . . . had operated properly. . . ."  Doc. 188-1, p.11:1-18.[4]  The Court agrees that it is not permissible for the VA doctors to offer such testimony.

Because doctors may need to determine the cause of an injury in order to treat it, determining causation may be an integral part of "treating" a patient. *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 870 (6th Cir. 2007), *as amended on denial of reh'g and reh'g en banc* (July 2, 2007) ("It is within the normal range of duties for a health care provider to develop opinions regarding causation and prognosis during the ordinary course of an examination . . . .") (citing *McCloughan v. City of Springfield,* 208 F.R.D. 236, 242 (C.D.Ill.2002); *Shapardon v. West Beach Estates*, 172 F.R.D. 415, (D. Hawaii 1997) (treating physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the prognosis and the extent of disability, if any, caused by the condition or injury); *Baker v. Taco Bell Corp.*, 163 F.R.D. 348, 349 (D. Colo. 1995)(opinions of treating physicians as to the cause of an injury or degree of future injury based on an examination of the patient "are a necessary part of the treatment of the patient.").

However, a treating physician may testify to possible causes and nature of Plaintiff's injury so long as these opinions are derived from their personal treatment of Plaintiff.  *Duran v. Home Depot USA, Inc.*, No. CV 13-608 WJ/SCY, 2014 WL 12601509, at *2 (D.N.M. Aug. 13, 2014); *McCloughan v. City of Springfield,* 208 F.R.D. at 242 ("doctors do not operate in a vacuum . . . Thus, the [c]ourt believes causation, diagnosis, and prognosis would be based on the treating

---

[4] Judge Yarbrough noted, however, that if a treating physician observed "an impression of a steering wheel" on a patient's body at the time of examination, that physician would be "fair game" as treating physician testimony because it would be observation made "in the course of treatment." Doc. 188-1, p. 12:1-16. The Court agrees with Judge Yarbrough's assessment of such testimony.

9

physician's personal knowledge . . . .").  A treating physician's testimony related to causation is therefore confined to purposes of deciding course of treatment.  Testimony by either Dr. Tart or Dr. Lanzi that the motor vehicle caused Plaintiff's medical conditions is improper as treating physician testimony because what happened in the motor vehicle accident is too remotely connected from anything learned through examination or assessment of Plaintiff and not necessarily integral to their treatment decisions.[5] *See Montoya v. Sheldon*, 286 F.R.D. 602 (D.N.M. 2012) (treating physician testifying as a lay witness cannot testify to any opinions regarding causation, because opinions regarding causation of a medical condition require knowledge derived from precious professional experience, which falls squarely within the scope of the rule of evidence governing expert testimony and thus by definition outside of the rule of evidence governing lay opinion testimony).

Therefore, testimony regarding the motor vehicle accident as the cause of Plaintiff's injuries and conditions is improper as treating physician testimony.

B.   <u>Rulings Regarding Challenges to VA Doctors' Testimony</u>[6]

The Court's previous rulings adequately address many of Defendant's objections to the VA doctors' testimony.  Based on these rulings, the Court turns to the more specific challenges to the VA doctors' testimony:

*(1) Return to Work Testimony:*

Defendant objects to testimony by Drs. Tart and Lanzi related to Plaintiff's ability to return to work, for example:

---

[5] A patient may self-report about what caused the complained-of injury or problem, but allowing self-reports to determine causation testimony would eliminate the need for a medical expert in almost every case.

[6] The Court's categorical rulings on the parties' arguments eliminate the need to address each of the numerous challenged statements or to provide separate rulings for each of these statements because, based on the Court's review of Defendant's list of challenged statements, each statement belongs to one of the categories discussed by the Court.

A. (Dr. Tart): . . .  My treatment goals were  improving his quality of life and his mood, not -- **it never was listed as a treatment goal to get him to go back to work.**

Q.   (By Mr. Lyle):  Why not?

A.   I generally don't -- well, a couple reasons.  I didn't think he could and I still don't think he can.  And I like to set treatment goals.  We set treatment goals for things that appear to be obtainable.  And in my field of practice, I'm a psychologist, so I can help him with mood.  We can work on mood, memory, behavior, thoughts.  Those are what we work on, cognitions and behaviors, and **we don't work on, let's say, vocational rehabilitation, for example.**

Doc. 185-1, p. 54:10-23 (emphasis added).  When Dr. Lanzi was asked whether he opined as a

treating physician as to whether Plaintiff could return to work, he responded:

A.  . . . I chronicled his injuries that he couldn't resume work in his present capacity at this point in time with those injuries.

Doc. 185-2, p. 50:23-25.

The Court OVERRULES Defendant's objection to testimony by the VA doctors to opine

as treating physicians regarding Plaintiff's ability to return to work.  Treating physicians address

a patient's ability to return to work in the general course of evaluation and treatment—one need

only think of the very conventional "doctor's note" employers require before an injured employee

may return to work. *See, e.g., Leffew v. Ford Motor Co.*, 258 F. App'x 772, 773 (6th Cir. 2007)

(plaintiff's employment terminated where treating physician advised that plaintiff could return to

work); *Lewis v. ITT Hartford Life & Acc. Ins. Co.*, 395 F. Supp. 2d 1053, 1063–64 (D. Kan. 2005)

(independent vocational evaluation not necessary where treating physician made clear an ability

to work in other occupations and/or where the doctors had undertaken a personal examination).

Should more specific information be sought concerning Plaintiff's work ability, then the services

of a vocational expert would probably become necessary, but the challenged testimony here is

proper treating physician testimony because it is circumscribed within the doctors' services as

treating physicians.

*(2) Expert Testimony on Diagnoses*

The Court has already overruled the challenged testimony in the "return to work" category and therefore OVERRULES Defendant's objections as to both Dr. Tart and Dr. Lanzi.

Defendant also objects to:

(1) Dr. Tart's conclusions and opinions regarding Plaintiff's personality changes, memory difficulties and tendency toward depression since Plaintiff's first visit in April of 2016. Doc. 185-1, p. 52:4-25; 40:7-17;

(2) Dr. Tart's diagnosis of "severe" traumatic brain injury ("TBI").  Dr. Tart's assessment considered Plaintiff's depression symptoms and diagnosed them as being "partially biologically based secondary to a traumatic brain injury, reinforced by rumination." Doc. 185-1, p. 30:4-9

(3) Dr. Lanzi's testimony regarding traumatic brain injury, largely referring to Dr. Lanzi's response to a letter from the Department of Labor Office of Workers' Compensation Programs ("DOL letter"). Doc. 185-2, p. 39:16-41:21.

The Court:

(1)   OVERRULES Defendant's objections as to Dr. Tart's opinions about mood/memory/personality changes and depression.  As a trained psychologist, Dr. Tart may opine and testify about her observations regarding Plaintiff during treatment:

(2) SUSTAINS Defendant's objections pertaining to a diagnosis of the nature of Plaintiff's brain injury.  Dr. Tart stated that Plaintiff self-reported being unconscious for 20-30 minutes before returning to consciousness, but this information is not sufficient for Dr. Tart to make a diagnosis regarding the severity of Plaintiff's brain injury and Plaintiff's self-report is not a substitute for an appropriate medical diagnosis.  Doc. 185-1, p. 71:4-17.  Dr. Tart admitted she is not a medical doctor, has no background in neurology and is not specialist in the area of brain injuries, Doc. 185-

1, p. 16:23-17:9; 56:1-7, and so any testimony by Dr. Tart in this area is improper for a treating physician testifying as a lay witness;

(3) SUSTAINS Defendant's objections pertaining to Dr. Lanzi's opinion testimony regarding the nature and severity and nature of Plaintiff's brain injury.  Doc. 185-2, p. 39:20-25; 40:1-5. Dr. Lanzi took issue with statements in the DOL letter that Plaintiff was suffering from PTSD/depression symptoms, rather than suffering from "residuals of TBI." Doc. 185-2, p. 39:17-19 (Dr. Lanzi stating that the DOL letter "mentions my name and falsely states that I stated that [Plaintiff] is having PTSD/depression symptoms rather than residuals of TBI").  There are two problems with the DOL letter.  First, both the letter and Dr. Lanzi's response was generated for purposes of workers' compensation benefits, which is not an issue in this case.  Second, even if the Court ruled that this testimony was proper, Dr. Lanzi's response relates to Plaintiff's diagnosis of TBI which the Court finds is improper treating physician testimony.  In other words, allowing in testimony about the letter—even if permissible in itself—would permit testimony that is otherwise improper for a treating physician testifying as a lay witness. Dr. Lanzi was trained and specializes in internal medicine, not neurology.  A diagnosis of TBI is not one that would be based on mere observation and assessment by a treating physician who is an internist without that doctor first being identified as an expert whose testimony can be scrutinized for reliability and qualifications under the Federal Rules of Evidence and under *Daubert.*  Of course, Dr. Lanzi may testify as a treating physician to his own assessment and conclusions as an internist based on a history taken from his patient as well as his own examination.  *See, e.g.,* Doc. 185-2, p. 46:6-13 (testimony regarding Plaintiff's shoulder issues).

C.    Qualifications

The qualifications of Drs. Tart and Lanzi are not an issue as long as they are testifying as treating physicians. The Court has already pinpointed those areas where the VA doctors may not testify as lay witness treating physicians without first being identified as experts (for example, nature and severity of Plaintiff's purported brain injury).  Because Plaintiff has not identified the VA doctors as experts under Rule 26, their testimony must be limited to treating physician lay witness testimony. Thus, there are no lingering *Daubert* issues to consider. To recap the Court's earlier discussions:

(1) Both doctors may testify as to Plaintiff's **ability to return to work** within the context of their treatment of Plaintiff.  Dr. Tart may present such opinions in the context of Plaintiff's cognitive abilities and Dr. Lanzi in the context of Plaintiff's general physical health;

(2) Testimony regarding a **diagnosis of the nature or severity of Plaintiff's purported brain injury** is not proper treating physician testimony. *See, e.g., see Montoya v. Sheldon*, 286 F.R.D. 602, 620 (D.N.M. 2012) (acknowledging that some courts allow a treating physician to testify as a lay witness to diagnoses, but noting that treating physician could not testify to any diagnosis of PTSD or any other mental disorder as that would be expressing an opinion "as to matters which are beyond the realm of common experience and which require special skill and knowledge of an expert witness . . . ."

(3) Testimony on **causation pertaining to the motor vehicle accident** is not proper treating physician testimony except for a determination of causation that is directly related and necessary in the treatment of Plaintiff.  Therefore, Defendant's listed objections as to causation from the motor vehicle accident are therefore SUSTAINED.

(4) Finally, the VA docs may not testify on **Plaintiff's prognosis** as treating physicians because such testimony implicates assumptions that must be made about the course of treatment at some point in the future rather than observations or evaluations made during treatment.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Exclude Impermissible Expert Testimony and Opinion Testimony of Dr. Candyce Tart and Dr. Richard Lanzi filed by Defendant FCA US **(Doc. 185)** is hereby GRANTED IN PART AND DENIED IN PART as described in this Memorandum Opinion and Order.

_____

CHIEF UNITED STATES DISTRICT JUDGE

15