# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

ROY MUNOZ,

      Plaintiff,

vs.                                                                                    Civ. No. 17-881 WJ/SCY

FCA US LLC (FIAT CHRYSLER
AUTOMOBILES US LLC, f/d/b/a
CHRYSLER/DODGE) and JOHN DOE
CORPORATIONS,
Defendants.

      Defendants.

### MEMORANDUM OPINION AND ORDER
### GRANTING DEFENDANT'S MOTION TO STRIKE AND/OR DISREGARD
### AFFIDAVIT OF ROY MUNOZ
### and
### SETTING BRIEFING SCHEDULE FOR RE-FILING OF RESPONSE AND REPLY TO
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 200)

THIS MATTER comes before the Court upon a Motion to Strike Affidavit of Jahan Rasty,

filed by FCA US, LLC ("FCA" or "Defendant") on September 25, 2020 **(Doc. 222)**.  Defendant

seeks a Court order striking new and previously-undisclosed opinions presented in paragraphs 9-

17 of the affidavit of Plaintiff's only retained liability expert, Jahan Rasty, Ph.D. Having reviewed

the parties' briefing and the applicable law, the Court finds that Defendant's motion is well taken

and, therefore, is granted in that ¶¶9-17 of the Affidavit (Doc. 208-5) shall be stricken.

## BACKGROUND

This is a product liability case arising from the alleged failure of an airbag to deploy during

a car accident while Plaintiff was working as an employee of the United States Forest Service.

Plaintiff alleges that on November 1, 2016, he was driving a forest service vehicle, a 2012 Dodge

Ram 1500, when he hit two elk. The airbag did not deploy, and Plaintiff was injured. Plaintiff claims that he has suffered serious personal injuries, lost his job, has incurred permanent disfigurement and will incur future medical and medically related expenses. The initial complaint was filed on August 25, 2017 (Doc. 1) and Plaintiff filed a Third Amended Complaint on November 21, 2018 (Doc. 43).

## I.   Relevant Procedural Background Presented Chronologically

Defendant contends that Plaintiff's pleadings have never alleged a specific defect theory and has expended considerable efforts in trying to obtain it:

- As early as September 2018, Defendant served contention interrogatories requesting that Plaintiff disclose his defect theory and in November 2018, filed a motion to compel when Plaintiff's responses were unsatisfactory. Doc. 41.

- On March 13, 2019, Plaintiff was ordered to supplement its responses to Defendant's contention interrogatories "at some point" although not necessarily immediately (as Defendant requested). Doc. 72 at 2.

- On April 25, 2019, the final deadline for expert disclosure, Plaintiff served his expert disclosure, which included Dr. Rasty's report, as well as a Fourth (and last) Supplemental Responses to Interrogatories.

### A.   Dr. Rasty's Report

*Dr. Rasty's Report:* Dr. Rasty's four-page report expressed his thoughts and opinions regarding "the probable threshold of the delta-V" experienced by Plaintiff's vehicle during the accident and "whether the vehicle's onboard Airbag Control Module (ACM) should have, at a minimum, recorded an event." Doc. 117-2 at 1.[1] Dr. Rasty noted in the "Background and Incident Description" section of the report that "*Reportedly,* Mr. Munoz suffered severe facial injuries as a result of his head striking the steering wheel during the accident." *Id.* (emphasis added). He did not provide any further analysis or opinion on that issue. The report gave two conclusions:

---

[1] A "delta-V analysis" appears to be an analysis of a vehicle change in velocity. Doc. 117-2 at 2.

1. There is no physical evidence consistent with passenger restraint systems being activated during the Subject collision.

2. The preliminary analysis of the delta-V experienced by the Subject vehicle is within the range of the threshold for event data to be recorded to the ACM and yet a download of the Subject vehicle's ACM reveals no recorded events.

Doc. 117-2 at 4.  As Defendant points out though, these opinions have nothing to do with whether a defect caused Plaintiff's alleged injuries.  Dr. Rasty provided no opinion as to (1) whether the air bag or the seatbelt pretensioner should have deployed during the accident; or (2) whether a defect or an alleged lack of testing caused the non-deployment, and/or whether non-deployment caused Plaintiff's alleged injuries.  *Id.*  As Defendants further note, the report does not even include the words "deploy," "design," "defect," "caused," or "testing."

B.      Supplemental Responses to Interrogatories

Similarly, Plaintiff's supplemental discovery answers fail to provide any information on what defect Plaintiff alleges caused his injuries:

The Plaintiff has not alleged that any particular part of the component or system was defectively **designed**. Instead, Plaintiff contends that the Occupant Restraint System, including the airbag and driver seatbelt did not function properly insofar as the force of the collision which caused the Plaintiff's injuries was more than sufficient to engage the . . . seatbelt and airbag . . . that would have prevented the Plaintiff's injuries had they functioned according to the design specifications for these components and systems.

Doc. 200-4 at 3 (emphasis added).  Then, having effectively abandoned a theory that the restraint system was improperly designed, Plaintiff appears to suggest that an unspecified *manufacturing* defect is to blame, stating "the sensors which should have caused the airbag to deploy and activate the pretensioners on the seatbelt did not function **as they were designed to function.**" Doc. 200-4 at 4 (Suppl. Resp. to Interrog. No. 10).  In the end, Plaintiff admits in these supplemental responses that he cannot actually identify the defect that caused his injuries: "At this point it is

impossible to determine whether the Occupant Restraint System components did not function as designed due to manufacturing defect or some other defect." *Id.*

C.   Defendant's Second Motion to Compel and Motion to Strike

Defendant continued its efforts to compel Plaintiff to disclose his defect theory and on May 30, 2019, filed both a motion to strike Dr. Rasty's report and a second motion to compel.

1.   *Motion to Strike (Doc. 117)*

In the motion to strike, Defendant contended that Dr. Rasty's report did not provide any opinions with respect to what vehicle component parts are defective and how they were causally related to Plaintiff's alleged injuries. The Court found that striking the report was inappropriate on the basis that Plaintiff represented to the Court that expert report was a "complete statement" of the opinions Dr. Rasty intended to give. Doc. 132 at 5 (referring to Doc. 117-2). The Court also found that the issue of "[w]hether Plaintiff has sufficient evidence or expert opinions to succeed on the merits is a matter for summary judgment or trial, not a motion to strike." *Id.*

The Court also disagreed with Defendant that Plaintiff should be "per se prohibited from supplementing his expert report" and agreed that Dr. Rasty should be allowed to supplement his report if his opinions changed based on "new discovery." *Id.* The Court's reasons were specific: first, Plaintiff had represented to the Court that Defendants were not producing requested discovery; and second, multiple motions to compel had been filed and were pending for ruling by the Magistrate Judge. The Court was therefore "not prepared to rule on this issue [on Dr. Rasty's right to supplement his report] without specific reference to the proposed supplementation and discovery at issue." *Id.* In other words, the Court's ruling was not an open-ended leave of Court for Dr. Rasty to supplement his report on a whim but rather, it had to be based on "new discovery."

2.   *Second Motion to Compel (Doc. 116)*

Defendant's second motion to compel stated that Plaintiff's supplemental responses had not shed any light regarding what vehicle defect, if any, was alleged against Defendant, and that "[a]t this stage of the litigation, FCA US is entitled to know what defect is being alleged so that it can properly formulate its defense." Doc. 116 at 5.  At that time, Plaintiff had also failed to produce any of the documents upon which Plaintiff relied in order to reach his conclusions.  *Id.* at 2-3.

In response to this second motion to compel, Plaintiff asserted that his supplemental answers to Defendant's contention interrogatories were based on Dr. Rasty's report.  Plaintiff assured the Court that he "has **fully and completely supplemented**, as best as is possible, his answers to Defendant's contention interrogatories." Doc. 125 at  7 (emphasis added).

On July 30, 2019, Magistrate Judge Steven Yarbrough held a hearing on Defendant's motion to compel.  Doc. 136.  Judge Yarbrough denied Defendant's motion "based on the representation that Plaintiff does not have any further information at this time." *Id.* at p. 3.  He also denied the motion with respect to the documents upon which Dr. Rasty relied because at the hearing (which was *three* months after Plaintiff's deadlines to provide materials in compliance with Rule 26) Plaintiff finally provided a thumb drive that contained the documents.  *Id.*  Judge Yarbrough also noted—and this is significant—"that if Plaintiff does not have another theory, that may be an issue for summary judgment, but that means there is currently nothing further for the Court to compel." *See* Doc. 136 at pp. 2-3.

D.   Dr. Rasty's Affidavit

The crux of this dispute is Dr. Rasty's unnotarized Affidavit, which Plaintiff attached as Exhibit 5 to his response to Defendant's motion for summary judgment.  *See* Doc. 208-5.  The Affidavit is four pages long (18 paragraphs) and single-spaced, as compared to Dr. Rasty's expert report (Doc. 117-2) which is also four pages but is double-spaced.

The Court has reviewed the Affidavit carefully and concludes that it offers new opinions regarding a design-defect theory, alleged inadequate testing, and purported causation. What is interesting is that Plaintiff seems to be resurrecting a design defect theory which he previously represented that he was *not* pursuing. *See* Doc. 108 at 8 (Plaintiff stating in response to summary judgment that Dr. Rasty's report did not "point to a poorly designed or manufactured part of component"). In his new Affidavit, however, Dr. Rasty asserts for the first time that the vehicle was defectively designed because the airbags and seatbelt pretensioners were calibrated to never deploy when impacting livestock (which Defendant contends is incorrect), and/or the vehicle was defective due to improper testing. *See* Doc. 208-5 at ¶¶10-17.

## II.    Relevant Law

Defendant moves to strike Dr. Rasty's Affidavit (specifically, ¶¶9-17) as a new and undisclosed opinion under Rule 26 and Rule 37 of the Federal Rules of Civil Procedure. Since those paragraphs in the Affidavit contain the substance of Dr. Rasty's opinions in that document, Defendant in effect would seek exclusion of the entire substantive portions of the Affidavit.

### A.    Rule 26

Fed. R. Civ. P. 26(a)(2) governs the disclosure of expert witnesses. *AIG Aviation Ins. v. Avco Corp.*, No. 09-352, 2011 WL 13174496, at *1 (D. N.M. March 14, 2011). Under the rule, disclosure of testifying experts must be accompanied by a written report—prepared and signed by the witness, which "must contain . . . **a complete statement of all opinions** a witness will express **and the basis and reasons for them**. . .'" *Id.* (quoting Fed. R. Civ. P. 26(a)(2)(B)) (emphasis added). These written reports are intended "to set forth the substance of the direct examination." *Id.* An expert report must not be sketchy, vague or preliminary; it must be detailed and complete, including how and why the expert reached a particular result, not merely the expert's conclusory

opinions. Fed.R.Civ.P. 26(a)(2)(B) Adv. Comm. Note (1993); *In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-1840-KHV, 2011 WL 5506259, at *1 (D. Kan. Nov. 10, 2011).

In addition to a party's initial duty to fully disclose "all opinions" that an expert will offer at trial, a party is also "under a duty to supplement at appropriate intervals any disclosures made if it learns that in some material respect the information previously disclosed was incomplete or incorrect, and if the additional or corrected information has not otherwise been disclosed to the parties during the discovery process." *Beller ex rel. Beller v. United States*, 221 F.R.D. 689, 701 (D.N.M. 2003). However, the purpose of supplementation "is to correct inadvertent errors, not to allow a party to engage in "gamesmanship" by creating a "new and improved" expert report in order to gain tactical advantage or by bolstering opinions to avert a dispositive motion or an expert challenge. *Rodgers v. Beechcraft Corp.*, No. 15-CV-129, 2016 WL 7888048, at *2 (N.D. Ok. Sept. 20, 2016) (citing *Beller*, 221 F.R.D. at 701) (emphasis added). The duty to supplement does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report, and does not allow a party to file supplements intended to "deepen" or "strengthen" its own expert's prior Rule 26(a)(2)(B) report. *Leviton Mfg. Co., Inc. v. Nicor, Inc.*, 245 F.R.D. 524, 528 (D.N.M. 2007) (citing *Beller v. United States,* 221 F.R.D. 696, 701 (D.N.M.2003) (Garcia, J.) (quoting *Resolution Trust Corp. v. Gregory,* No. CV:94–0052, (D.N.M.) (Kelley, J.); *Vigil v. Burlington N. & Santa Fe Rwy. Co.*, 521 F.Supp.2d 1185, 1207 (D.N.M. 2007) (accord). In the context of experts specifically, supplementation is not allowed "when the party's motive is to wholly rework [a] damages claim or change the substance of their contentions." *Thomson v. Nat'l R.R. Passenger Corp.*, 2019 WL 6717255, at *2.

Rule 26(a)(2)'s requirements are "mandatory and self-executing." *Kern River Gas Transmission Co. v. 6.17 Acres of Land, More or Less, in Salt Lake Cty., Utah*, 156 F. App'x 96, 102 (10th Cir. 2005). And there is good reason for courts to require adherence to the rule:

> To rule otherwise would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could "supplement" existing reports and modify opinions previously given. This practice would surely circumvent the full disclosure requirement implicit in Rule 26 and would interfere with the Court's ability to set case management deadlines, because new reports and opinions would warrant further consultation with one's own expert and virtually require new rounds of depositions. That process would hinder rather than facilitate settlement and the final disposition of the case.

*Beller ex rel. Beller v. United States*, 221 F.R.D. 689, 695 (D.N.M. 2003).

B.    Rule 37

Rule 37(c)(1) provides an incentive for full disclosure, namely, that a party "will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed." *AIG Aviation Ins.*, 2011 WL 13174496, at *2.  *Rodgers*, 2016 WL 7888048, at *3 ("The expert disclosure requirements of Rule 26 are clear and a 'litigant who fails to comply with these requirements does so at his own peril.").

The Tenth Circuit has identified four factors a court should consider when deciding whether the failure to disclose an opinion is substantially justified or harmless:

(1) the prejudice or surprise to the party against whom the testimony is offered;
(2) the ability of the party to cure the prejudice;
(3) the extent to which introducing such testimony would disrupt the trial; and
(4) the moving party's bad faith or willfulness.

*Garcia v. Bd. Of Albuquerque Public Sch.*, No. 05-0062-WPJ/WPL, 2006 WL 8444063, at *3 (D.N.M. May 10, 2006) (Johnson, J.) (citing *Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Company,* 170 F.3d 985, 993 (10th Cir.1999)). The party who violates the requirements in Rule 26 has the burden to establish that these factors weigh in favor of allowing a new expert

8

opinion. *See The Quapaw Tribe of Okl. v. Blue Tee Corp.*, No. 03-CV-0846-CVE-PJC, 2010 WL 3909204, at *3 (N.D. Okl. Sept. 29, 2010) (requiring party that violated Rule 26 to show that its "untimely disclosure of new expert testimony is harmless or substantially justified.").

**DISCUSSION**

Defendant contends that Plaintiff's attempt to present new and undisclosed opinions from his expert constitutes a clear violation of Rules 26 and 37 as well as this Court's Scheduling Order and this Court's Local Rule 26.3.  Plaintiff, however, insists that Dr. Rasty "hasn't offered any new opinions . . ." Doc. 230 at 3.  He claims instead that the Affidavit merely "reiterates and highlights the opinions contained in his initial report, including the fact that the force of the collision should have caused the Occupant Restraint System ("ORC") to engage, and that the collision did not register on the vehicle's recording system, showing the OCR did not engage.[2]

**I.      Dr. Rasty's Affidavit Constitutes New and Undisclosed Opinions**

The Court has compared Dr. Rasty's initial report (Doc. 117-2) with his Affidavit (Doc. 208-5) and concludes that Dr. Rasty had indeed made substantive changes to his report without explaining the basis for the changes.  The Court disagrees with Plaintiff that the Affidavit offers no new opinions.  Dr. Rasty's report contained, for the most part, mathematical equations and graphs he relied on to determine the speed of the vehicle on impact with the elk.  His sole conclusions in his report were that there was no evidence that (1) the passenger restraint systems were activated during the accident; and (2) that the vehicle's Airbag Control Module should have, but did not, record any events.  There is no reference to any particular defect that may have caused

---

[2] There is some confusion over the abbreviation used for the Occupant Restraint System.  *See* Doc. 230 at 4 & Doc. 234 at 5 & 6 (using both "ORC" and "OCR"); *but see* Doc. 193-14 at 2 (using "ORC").  The Court will use "ORC" for purposes of this Order.

the non-activation of the Airbag Control Module and no views expressed as to the connection

between the failure of the ORC to record the events and Plaintiff's alleged injuries.

The Affidavit, on the other hand, delves into whether the airbag (the ORC) was designed

to deploy when the vehicle impacts wildlife. It contains unequivocal and actual *opinions* as to what

caused the accident, for example:

> The above target weight and collision speed parameters are inadequate as they are
> not representative of real world situations where a vehicle collides with the type of
> wild game and livestock normally encountered in the state of New Mexico.

208-5 at 2, ¶11; and:

> Plaintiffs' injuries to his facial area were caused by impacting the steering wheel
> and/or other interior surfaces of the vehicle during the collision in the absence of
> airbag deployment. The lack of airbag deployment, in turn, resulted from the
> manufacturer's improper wild game collision testing that did not account for realistic
> wild game and livestock weights and impact speeds that are reasonably expected to
> occur in real-world situations.  **It is my professional opinion that a reasonably
> prudent person would find the risk associated with the Subject vehicle
> unacceptable, rendering the product defective,** if they were aware that the Subject
> vehicle was not designed, nor were its sensor's calibrated, to deploy the airbags to
> protect the occupant in the event of a real-world wild game or livestock impact, nor
> was it even tested in such a manner to determine how the vehicle and passengers
> would be affected in the likely event of a larger, wild game or livestock impact.

Doc 208-5 at 16 (emphasis added).  Dr. Rasty's Affidavit clearly posits a new and particular

theory: that the ORC was designed to  never deploy when the vehicle impacts wildlife, and

that this defect caused the accident—was never mentioned or discussed in his expert report.

His original report never mentioned that the collision should have—but did not—activate

the airbags or the seatbelt "pretensioners" nor did it provide any analysis which would lead

to that conclusion.

## II.     Dr. Rasty's New Opinions Should Be Stricken Based on Rule 37 Factors

Dr. Rasty's Affidavit is a prior undisclosed opinion submitted by Plaintiff to support his

response to a motion for summary judgment and it is inadmissible unless Plaintiff can show that

the nondisclosure was justified or harmless under Rule 37(c)(1). *Okl. v. Tyson Foods, Inc.*, No. 05-CV-329-GKF-PJC, 2009 WL 2252129, at *5 (N.D. Okl. July 24, 2009); *Leon v. FedEx Ground Package Sys., Inc.*, No. CIV 13-1005 JB/SCY, 2016 WL 1158079, at *12 (D.N.M. Mar. 1, 2016) (Rule 37(c) permits courts to refuse to strike improper expert opinions and allow the expert testimony if the violation of the Rules is justified or harmless).  In order to make this determination, the Court proceeds to consider the Rule 37 factors in turn.  The Court points out that Plaintiff does not offer any counter-argument to these factors except for the prejudice prong.

      A.    <u>Prejudice to Defendant</u>

      Defendant contends that the new opinions in the Affidavit will cause prejudice and surprise to FCA US.  The Court notes that there is no explanation for the late disclosure and no claim by either Dr. Rasty or Plaintiff's counsel that there has been recent discovery produced by Defendant which formed the basis for a reconsideration of the expert report.[3] *See Beller*, 221 F.R.D. at 697 (striking expert report where plaintiff's expert made changes to his opinions when no new discovery had been produced).

      Plaintiff contends that Defendant cannot claim either prejudice or surprise, and blames defense counsel for deciding not to depose Dr. Rasty in order to discover the information contained in the Affidavit.  This argument is easily rejected because it is contrary to the purpose behind Rule 26 expert disclosures.  Defendant was not required take Dr. Rasty's deposition in order to find out what his opinions are.  *See, e.g., Cordero v. Froats*, No. CV 13-031 JCH/GBW, 2016 WL 7426577, at *3 (D.N.M. Sept. 27, 2016) (". . .  it was not Defendants' obligation to depose Noedel in order

---

[3] Plaintiff refers to Defendant's delay in producing discovery material to him—but this is old news relating back to June of 2019 when Plaintiff responded to Defendant's contention interrogatories.  *See* Doc. 230 at 2 (referring to Doc. 125).  All of the "delayed" discovery has long since been produced and has no relevance to any of the new information disclosed in Dr. Rasty's Affidavit in August of 2020. *See* Doc. 208-5, ¶7 (referring to documents reviewed by Dr. Rasty all of which was produced by Defendant over a year ago).

to find out what his opinions were; plaintiff's disclosure was required to provide that information.").[4]  Rule 26 requires disclosure of an expert report that is "complete" in the first instance—not a "work in progress" that is subject to substantive revisions to suit a particular use (such as a responsive pleading to a summary judgment motion). *Id.* at *3 (noting that the advisory committee's comments to Rule 26 imply that the report should be comprehensive enough so that there is often no need to depose the expert, stating that "in many cases the report may eliminate the need for a deposition").

Defendant explains that it did not previously depose Dr. Rasty based on the disclosures made in his report, which did not present any defect or causation opinion.  Defendant is now prejudiced because it was not aware of the newly disclosed Affidavit opinion at the time it filed its summary judgment motion.  Nevertheless, Plaintiff claims that Defendant cannot claim surprise or prejudice because Defendant's experts anticipated Dr. Rasty's new theories and were therefore prepared to counter them. Plaintiff points specifically to the Declaration of John Hinger, one of Defendant's experts who examined the subject vehicle and opined that the OCR design was acceptable in light of the delta-V force that occurred during the accident:

> Because the risk of injuries from an airbag deployment, airbag systems are designed to deploy in collisions where the benefit of an airbag deployment likely outweighs the risk of injuries an occupant may sustain as a result of the airbag deploying."

---

[4] Other courts have recognized that one cannot seek relief under Rule 37 by claiming that the opposing party can simply depose the expert and thus cure non-disclosure. *See Carroll v. Allstate Fire & Cas. Ins. Co.,* No. 12-CV-00007-WJM-KLM, 2014 WL 859238, at *4 (D. Colo. Mar. 4, 2014) (Rule 26's disclosure requirements are designed to allow the opposing party to properly prepare to respond to the opinion of the disclosed expert to the extent that opposing counsel should not need to depose the expert to understand the opinions he or she offers or the basis for those opinions) (collecting cases); *In re Motor Fuel Temperature Sales Practices Litig.,* No. 07-1840-KHV, 2011 WL 5506259, at *1 (D. Kan. Nov. 10, 2011) (the Rule 26 expert report must be complete such that opposing counsel is not forced to depose an expert to avoid ambush at trial) (citing *Salgado v. Gen. Motors Corp.,* 150 F.3d 735, 742 n. 6 (7th Cir.1998); *see also Sylla–Sawdon v. Uniroyal Goodrich Tire Co.,* 47 F.3d 277, 284 (8th Cir.), cert. denied, 516 U.S. 822 (1995).

Doc. 200-9 (Hinger Decl.) at 3, ¶9.  Plaintiff's argument fails for several reasons.  First, as

Defendant notes, Mr. Hinger's opinion does not necessarily attempt to rebut Dr. Rasty's

new opinion theories because (as explained in Defendant's reply to its summary judgment),

those new theories are what Defendant considers *incorrect* factual and legal premises.

Second, the fact that Mr. Hinger discusses airbag deployment in his opinion simply means

that he happened to include the subject in his general investigation of the crash and vehicle

at issue in this lawsuit.  He did not have Dr. Rasty's new theories in front of him at the time

he generated his report and so he could not have intentionally focused his investigation at

rebutting those theories.  Third, even if Defendant could have anticipated Dr. Rasty's new

theories, Plaintiff is not relieved of his obligation under Rule 26 to timely present *all* of Dr.

Rasty's opinion in the expert report.

Thus, the Rule 37 "prejudice" factor is satisfied.

B.      No Ability to Cure Prejudice

To begin with—Plaintiff does not in any way suggest that the prejudice can be cured, but

rather maintains that there *is* no prejudice.  In that regard, the Court agrees with Plaintiff's silence

on the subject of curing the prejudice: it cannot be done at this point. Plaintiff filed the complaint

in this case in August of 2017.  Discovery ended on March 24, 2020 and the last deadline for

discovery motions was April 14, 2020, in a series of scheduling orders that continued to extend

deadlines for the parties.  *See* Docs. 33, 74, 164, 181.

Addressing these late disclosures at this point would involve increased costs for Defendant,

re-opening expired deadlines and/or a delay in these proceedings which have already been

protracted.  *See, e.g., AIG Aviation Ins.*, 2011 WL 13174496, at \*1-3 (denying a motion to

supplement expert opinions); *Rodgers*, 2016 WL 7888048, at \*3 (disallowing new expert opinions

because, "[i]t would require re-opening all of the matters described . . . to afford Defendants an opportunity to consider and respond to the information in the Declarations" and "would result in substantial cost and delay to the Defendants and would derail the efficient resolution" of the case). In particular, Defendant's three retained liability experts would have to review Dr. Rasty's new opinions and then issue supplemental and/or rebuttal reports, and Defendant would likely consider filing *Daubert* motions as well.[5]

This Rule 37 factor is also satisfied in favor of striking the Affidavit.

C.    Disruption of Trial

At present, there is no trial date set in this case. Nevertheless, that is not a sufficient reason to suggest that sanctions are not appropriate. First, even though any curative sanction would produce its effect before any trial commences, there "has been, and will continue to be, significant disruption and delay to the prompt and expedient resolution of this matter as a direct result of the Plaintiff's untimeliness." *Jama v. City & Cty. of Denver*, 304 F.R.D. 289, 301 (D. Colo. 2014). Second, finding that sanctions are not appropriate simply because trial can always be delayed would "effectively reward [plaintiff's] non-compliance" with Rule 26 and this Court's Orders." *Sender v. Mann*, 225 F.R.D. 645, 657 (D. Colo. 2004). As mentioned previously, discovery deadlines have long since expired and the litigation in this case has already stretched past three years. For this reason, the third Rule 37 factor weighs in favor of striking Dr. Rasty's Affidavit.

D.    Willfulness of Plaintiff's Conduct

---

[5] Defendants reference several courts that have excluded Dr. Rasty's opinion in the areas of biomechanical engineering, medicine, and anatomy; and adequacy of warnings on equipment. *See* Doc. 222 at 16, n.2.

Under this last factor, the Court must consider whether Plaintiff's non-disclosure of Dr. Rasty's new opinions was willful or in bad faith. The Court finds that the non-disclosure was at least *willful* conduct for several reasons.

First, the deadline set for Rule 26 disclosures was clear, and as mentioned previously, it was extended several times. The deadline for expert disclosures was clear and was extended twice for Plaintiff. *See Ray v. Weslo Corp.,* No. CIV-2010-482-W, 2011 WL 13229620, at *3 (W.D. Okla. Nov. 8, 2011) (evidence of willfulness of part of defendants "cannot be easily dismissed" where "the date for submission of expert reports was clear"). The Court's Scheduling Order was clear and specific about what was required:

> Parties must disclose the names of all expert witnesses, including treating physicians, the subject matter on which the experts will present evidence, and a summary of the facts and opinions to which the experts are expected to testify by this date. **Experts who are retained or specifically employed to provide expert testimony must also submit an expert report by this date**.

Doc. 33 at 2, n.2 (emphasis added).

Second, it is obvious that the Affidavit was created in the nick of time as an exhibit to Plaintiff's response to Defendant's summary judgment motion—sixteen months after Dr. Rasty's expert report. Dr. Rasty's expert report is dated April 25, 2019. Doc. 117-2. The Affidavit is dated August 17, 2020, eleven days before Plaintiff's response to Defendant's summary judgment was filed.

Third, Plaintiff has always been aware that he needed an expert to provide causation testimony, based on his unsuccessful efforts to use treating physicians in place of retained experts to establish causation. For example, this Court found that testimony by either of Plaintiff's treating physicians that the motor vehicle caused Plaintiff's medical conditions is improper because "what happened in the motor vehicle accident is too remotely connected from anything learned through

examination or assessment of Plaintiff and not necessarily integral to their treatment decisions." *See* Doc. 205, *Munoz v. FCA US LLC*, No. CV 17-881 WJ/SCY, 2020 WL 4500603, at *5 (D.N.M. Aug. 5, 2020) (Johnson, J).[6]  Thus, Plaintiff's counsel cannot reasonably argue that he was not required to disclose experts on liability or causation issues by the deadline that was set forth in the Court's last Scheduling Order.  *See, e.g., Aparicio v. Singh*, No. CV-05-262 MV/RLP, 2006 WL 8444252, at *2 (D.N.M. Apr. 4, 2006) (striking expert where plaintiff tried to justify tardy and inadequate Rule 26 disclosures by stating that she did not believe expert testimony on liability issues was necessary until she reviewed the report of defendants' expert).

Fourth, Plaintiff's position has always been that Dr. Rasty's opinion served as a "complete statement of the opinions the witness will give." Plaintiff represented as much to the Court when opposing Defendant's earlier motion to strike and two motions to compel, which are discussed above.

Fifth, the Court finds no justification for Plaintiff's purported "supplementation." Plaintiff does not argue (nor can he) that he recently obtained new information through discovery which obligated Dr. Rasty to submit the Affidavit based on that new information. *See Martinez v. Target Corp.*, 384 F. App'x 840, 847 (10th Cir. 2010) (court has "broad discretion" to determine whether to allow the late designation of experts and "need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose.").

Based on the above analysis, the Court finds that all of the Rule 37 factors weigh in favor of striking Dr. Rasty's new opinions set forth in ¶¶9-17 of his Affidavit.

---

[6]  In that opinion, the Court agreed with Judge Yarbrough's finding that it would be "impermissible" for a treating physician to opine that Plaintiff's injuries "were caused by his face and body hitting the steering wheel and dashboard" or that Plaintiff's injuries "would not have happened or would have been much less severe if his air bag . . . had operated properly. . . ." The Court noted, however, that it would be "fair game" for a treating physician to testify to observations of an impression of a steering wheel on a patient's body.  Doc. 205 at 9, n.4.

### III.   Other Reasons Supporting Striking of Dr. Rasty's Affidavit

Defendant offers three more reasons for striking Dr. Rasty's new opinions—and Plaintiff addresses none of these. The Court need not embark on a full discussion on these arguments because the Affidavit will be stricken on other grounds.  However, they deserve some mention in passing because one may have had some merit.

(1) Defendant contends that Dr. Rasty's opinions are based on undisclosed documents and information, even though Plaintiff represented to Judge Yarbrough at a hearing on Defendant's second motion to compel that he had in fact produced all materials upon which Dr. Rasty relied in writing his expert report. Doc. 136 at 3.[7]  This argument has merit, but needs no further discussion because it is sufficiently tied to Plaintiff's nondisclosure of Dr. Rasty's new opinions set forth in the Affidavit.

(2) Defendant also contends that Dr. Rasty's new opinions improperly invade the province of the jury because they give a legal conclusion addressing an ultimate issue which is for a jury to decide.  In presenting this argument, Defendant cites to *Karns v. Emerson Elec. Co.,* 817 F.2d 1452, 1459 (10th Cir. 1987).  However, Defendant incorrectly cites to *Karns* for that proposition, since that case actually states this:

> . . . Fed.R.Evid. 704(a) provides that an expert's opinion testimony "**is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.**" Opinions embracing legal standards may, however, be excluded for other reasons, such as the likelihood of jury confusion, the danger of unfair prejudice, or the inability of such evidence to assist the trier of fact.

817 F.2 at 1459 (emphasis added).  Contrary to Defendant's representations, the Federal Rules of Evidence *do* allow an expert to offer opinion evidence even when it "embraces an ultimate issue

---

[7] To be specific, the Affidavit relies in part on reports from the "Department of Transportation Traffic and Crash Annual Reports," as well as information from the Rocky Mountain Elk Foundation's website. See Doc 208-5 at ¶¶ 7, 12, & 13 (citing websites).

to be decided by the trier of fact." Fed.R.Evid. 704(a).  However, an expert may not simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment. *See United States v. Simpso*n, 7 F.3d 186, 188-89 (10th Cir.1993).  Defendant does not argue that the Affidavit lacks an explanation of the criteria on which Dr. Rasty based his opinions, and so the Affidavit would not be stricken on that basis.

(3) Last, Defendant contends that Dr. Rasty is not qualified to give some of the opinions included in the Affidavit.  For example, Dr. Rasty opines that "all of the injuries sustained by the driver were a direct result of . . . lack of airbag deployment."  Doc. 208-5, ¶14.  Defendant argues that because Dr. Rasty is not a medical doctor, he should be precluded from testifying regarding potential for injury.  To be sure, a *Daubert* motion would have been appropriate in order to determine whether Dr. Rasty was qualified to make all the opinions contained in the Affidavit, but the Court's striking of the Affidavit renders such a motion unnecessary now.

Plaintiff did not respond to these three arguments raised by Defendant, but he raises a separate argument that Defendant's motion is an attempt to convince this Court to exclude "relevant evidence," and provides several cases to support it. Doc. 230 at 4.  This argument is easily rejected.  First, whether Dr. Rasty's Affidavit is "relevant evidence" is irrelevant in itself, since it is being stricken for very specific reasons having nothing to do with its evidentiary value. And second, the Court would note that the cases on which Plaintiff relies have nothing at all to do with exclusion of expert reports. *See* Doc. 234 at 2, n.2 (Defendant's comments on those cases).

Accordingly, the Court concludes that Defendant has presented good reason to strike ¶¶9-17 of Dr. Rasty's Affidavit (Doc. 208-5), while Plaintiff has offered very little to rebut or challenge any of Defendant's arguments. Supplementation does not confer a right to ignore Court deadlines,

reopen discovery, find new facts or generate new expert reports. *Rodgers*, 2016 WL 7888048, at

\*3 (citing *Beller*, 221 F.R.D. at 701);    *Thomson v. Nat'l R.R. Passenger Corp.*, No.

117CV00565JCHJFR, 2019 WL 6717255, at \*2 (D.N.M. Dec. 10, 2019) (a party may not use the

pretext of supplementation "to reopen discovery, close gaps in their evidence, and essentially

generate new expert reports."  The Court finds that Plaintiff has engaged in exactly the kind of

discovery tactics that Rule 26 and Rule 37 were designed to prevent and that striking those portions

of the Affidavit is appropriate and warranted.  Defendant's motion to strike Dr. Rasty's Affidavit

is therefore granted.

### IV.    Re-Briefing of Response and Reply to Defendant's Motion for Summary Judgment

Defendant's Motion for Summary Judgment (Doc. 200) is currently pending before the

Court for ruling.  In asking the Court to strike ¶¶9-17 of Dr. Rasty's Affidavit, Defendant in effect

seeks exclusion of the whole of Dr. Rasty's Affidavit, since those paragraphs constitute the

substance of Dr. Rasty's new opinions. Since Plaintiff's response relies heavily on Dr. Rasty's

opinions contained in the Affidavit, it is of little use to the Court at this point and the Court finds

that having the parties re-brief the response and reply without mention of Dr. Rasty's Affidavit is

preferable to simply trying to ignore the Affidavit.  This would also allow Plaintiff to rely on Dr.

Rasty's expert opinion, if he so chooses, to bolster his arguments in the response.

The Court therefore STRIKES both the response and reply (Docs. 208 and 223) to

Defendant's motion for summary judgment and hereby orders Plaintiff to file a response **within

three (3) weeks** of the entry of this Order, to allow Plaintiff adequate time to re-file a response

brief that will make *no* reference to ¶¶9-17 of Dr. Rasty's Affidavit.  Plaintiff may of course rely

on Dr Rasty's expert report (Doc. 117-2) in his arguments, which was properly disclosed to

Defendant and was represented as Dr. Rasty's "complete statement" of his opinions under Rule 26.

Defendant's reply brief will be due **three (3) weeks** from the filing of Plaintiff's response brief.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Strike Affidavit of Jahan Rasty **(Doc. 222)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that parties are ordered to re-submit response and reply briefs to Defendant's pending motion for summary judgment within the time frames given above.

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE