# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

ROY MUNOZ,

      Plaintiff,

vs.                                                                    Civ. No. 17-881 WJ/SCY

FCA US LLC, et al FIAT CHRYSLER AUTOMOBILES
US LLC, f/d/b/a CHRYSLER/DODGE
and JOHN DOE CORPORATIONS,

      Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## ON ALL OF PLAINTIFF'S CLAIMS

THIS MATTER comes before the Court upon a Motion for Full and Final Summary Judgment filed by Defendant FCA US LLC ("Defendant" or "FCA") on July 21, 2020 **(Doc. 200)**. Following oral argument on the motion, the Court reviewed the parties' pleadings and considered the applicable law and now finds that Defendant's motion is well-taken. Accordingly, summary judgment is granted in favor of Defendant.

## BACKGROUND

This is a products liability case arising from the apparent failure of an airbag to deploy during a vehicle accident while Plaintiff was working as an employee of the United States Forest Service in Rio Arriba County, New Mexico. Plaintiff alleges that on November 1, 2016, he was driving a forest service vehicle ("subject vehicle"), a 2012 Dodge Ram 1500, when he hit two elk. The airbag did not deploy and he was injured. Plaintiff claims that he has suffered serious personal injuries, lost his job, incurred permanent disfigurement and will incur medical and medically

related expenses in the future.  Plaintiff filed the initial complaint was filed on August 25, 2017

(Doc. 1) and filed a Third Amended Complaint ("Complaint") on November 21, 2018.

**DISCUSSION**

**I.    Scope of Plaintiff's Claims and Court's Overview**

The Complaint alleges claims of (1) product defect and (2) breaches of express and

implied warranty of merchantability.  Doc. 43 at ¶¶7-12. Defendant seeks summary judgment on

all of these claims. The Court agrees with Defendant that, except for allegations of manufacturing

defect and assertions of breach of warranty, Plaintiff's specific product defect theories, as plead

by his counsel, have been rather generic and as a result, difficult to pin down:

> The Defendant represented in its sales materials that the vehicle had a reliable occupant
> restraint system, including airbags and seatbelts. This vehicle did not have a properly
> functioning system for occupant restraint and, accordingly, the Defendant is guilty not
> only of producing a defective vehicle, but also responsible for breach of warranty.

Doc. 200-4 (Resp. to Interrog. 11).  This lack of specificity casts a wide net into product defect

territory, but here, Defendant moves for summary judgment on marketing defect and design

defect theories.

A.    <u>Plaintiff Does Not Assert a Marketing Defect Claim</u>

Defendant argues that any purported marketing defect theory claim must fail as a matter

of law because Plaintiff has not presented any evidence or expert opinion that addresses how or

why the airbag system was unreasonably dangerous. *See Silva v. Smithkline Beecham Corp.*, No.

31,276, 2013 WL 4516160, at *3 (N.M. Ct. App. Feb. 7, 2013); *Pac. Indem. Co. v. Therm-O-*

*Disc, Inc.*, 476 F. Supp. 2d 1216, 1231 (D.N.M. 2006) (plaintiff in marketing defect claim must

show the product was unreasonably dangerous and yet no warning was provided or the warning

was inadequate); *see also Am. Mech. Sols., L.L.C. v. Northland Process Piping, Inc.*, 184 F. Supp.

3d 1030 (D.N.M. 2016) (expert testimony required to prove causation for claims of breach of

2

contract, breach of implied warranty of merchantability, and breach of implied warranty of fitness for particular purpose).

The Court agrees that Defendant would be entitled to summary judgment to a marketing defect claim because Plaintiff does not present sufficient evidence to sustain this claim.

B.      Plaintiff Cannot Proceed On a Design Defect Theory

Defendant contends that Plaintiff has not properly asserted a "design defect" theory and that it would fail as a matter of law even if Plaintiff were allowed to pursue the claim.

On December 11, 2020, the Court foreclosed Plaintiff's ability to pursue a design defect theory by striking a purported "supplemental report" by Plaintiff's liability expert, Dr. Jahan Rasty, which Plaintiff attached as an exhibit in his response to summary judgment.  Doc. 237; *see* Doc. 208-5.  In that Order, the Court agreed with Defendant that:

(1) Plaintiff never alleged a specific defect theory in any of the pleadings, despite Defendant's continuous efforts to obtain responses to contention interrogatories;

(2) Plaintiff had clarified in verified discovery responses that he was abandoning the theory that either the subject vehicle or its components were defectively designed; and

(3) Plaintiff presented no evidence to support such a theory and represented that he was pursuing only a manufacturing defect claim. *See, e.g.,* Doc. 200-4 at 3 (interrogatory response stating that "Plaintiff has not alleged that any particular part of the component or system was defectively designed. Instead, Plaintiff contends that the Occupant Restraint System, including the airbag and driver side seatbelt did not function properly . . . ." Doc. 237 at 9.

The Court found that that Dr. Rasty's Affidavit did not "supplement" his previous opinion at all, but instead had made substantive changes and clearly posited a new and particular theory: that the Occupant Restraint System ("ORC")[1] was *designed* to never deploy when the vehicle impacts wildlife, and that this defect caused the accident. Dr. Rasty's original report did not

---

[1] The Occupant Restraint System ("ORS") is also referred to as the "Occupant Restraint Controller or ORC." *Cmp.* Doc. 238 at 3 with Doc. 200 at 2.  The Occupant Restraint Controller is the component part in the vehicle that makes the decision whether to deploy the airbags and the seatbelt pretensioners. *See* Doc. 200 at 5.

mention any defect in the design of the subject vehicle which led to a failure to activate either the airbags or seatbelt "pretensioners," nor did it provide any analysis that would lead to that conclusion:

> The Court has reviewed the Affidavit carefully and concludes that it offers new opinions regarding a design-defect theory, alleged inadequate testing, and purported causation. What is interesting is that Plaintiff seems to be resurrecting a design defect theory which he previously represented that he was *not* pursuing. *See* Doc. 108 at 8 (Plaintiff stating in response to summary judgment that Dr. Rasty's [original] report did not "point to a poorly designed or manufactured part of component").

Doc. 237 at 6.  The Court concluded that Dr. Rasty's late-disclosed Affidavit prejudiced Defendant by presenting a new theory too late in the litigation and that it violated Rules 27 and 37 of the Federal Rules of Civil Procedure.  *Id.*  Parties were then ordered to re-brief the response and reply without including Dr. Rasty's Affidavit.

Undaunted by the Court's ruling, Plaintiff's counsel continues to advance a design defect theory in the re-filed response as though it is still in play.  It is not.

Plaintiff points to an earlier Order where the Court denied Defendant's motion to exclude Dr. Rasty's initial expert report, completely ignoring the Court's ruling striking Dr. Rasty's later "supplemental report" which Plaintiff used to respond to Defendant's summary judgment motion. *See* Doc. 238 at 10 (referring to Court's Order Doc. 132)  In the new response, Plaintiff continues to pursue a design defect theory even without the Affidavit. *See* Doc. 238 at 18 ("This [a fatal crash in 2018 reported by the New Mexico Department of Transportation] must be combined with the facts that show the Defendant **intentionally designed the system** not to deploy in any wild game impact testing it performed on the vehicle") (emphasis added).

The Court's ruling inflicted a fatal blow to Plaintiff's design defect theory because such a theory requires evidence—including expert testimony—to support it.  *Gurule v. Ford Motor Co.*,

No. 29,296, 2011 WL 2071701 (N.M. Ct. App. Feb. 17, 2011) (expert testimony sufficient to support finding that alternative design of roof of automobile would have prevented enhanced fatal injuries to motorist); *cmp. Fischer v. BMW of N. Am., L.L.C.*, No. 18-CV-00120-PAB-MEH, 2020 WL 5798526, at *3 (D. Colo. Sept. 29, 2020), *aff'd sub nom. Fischer v. BMW of N. Am., LLC*, No. 20-1399, 2021 WL 5458444 (10th Cir. Nov. 23, 2021) (whether or not automobile jack was defectively designed is a matter that is beyond the ambit of common knowledge or experience of ordinary persons and is thus an issue for which expert testimony is require).

The Court sees no reason to reconsider its prior rulings on this issue. The Court made it clear in its decision that Dr. Rasty's Affidavit would be excluded and that Plaintiff may rely *only* on Dr. Rasty's initial report. Without Dr. Rasty's Affidavit (which was stricken by the Court), Plaintiff is essentially left without any evidence to advance a design defect theory, even if Plaintiff were permitted to continue alleging this claim. The Court sees no reason to reconsider its prior rulings on that issue.

## II.   Legal Standard

Summary judgment is not appropriate where there is a genuine issue as to any material fact. Fed. R. Civ. P. 56(a). In reviewing motions for summary judgment, courts may not weigh the evidence or make credibility determinations. *Utah Lighthouse Ministry v. Found. For Apologetic Info. & Res.*, 527 F.3d 1045, 1050 (10th Cir. 2008). To defeat summary judgment, the nonmovant must set forth specific facts from which "a rational trier of fact could find for the nonmovant." *Id*. (emphasis added). The evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party." *Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co*., 636 F.3d 1300, 1302 (10th Cir. 2011). After doing so, if there are disputes of material fact those disputes preclude the entry of summary judgment against the non-

moving party. *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 111 (10th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477, U.S. 242, 248 (1986)).

## III.   Defendant's Facts

Defendant contends that Plaintiff cannot present evidence to support the essential elements of either a defect or proximate cause relating to the vehicle crash and moves for summary judgment on all of Plaintiff's claims.

### A.   Defendant's Undisputed Facts (Doc. 200 at 2-4)

The bare-bone facts are these:[2]

- The motor vehicle at issue in this lawsuit is a 2012 Ram 1500 ("subject vehicle), VIN 1C6RD7FP5CS290440.

- Defendant FCA US manufactured the subject vehicle, and non-party TRW supplied the Occupant Restraint Controller ("ORC") and the two front sensors ("remote front accelerometers") for the airbag system in the subject vehicle.

- The subject vehicle's Certificate of Origin confirms it was transferred on May 18, 2012, to the "USDA Forest Region 3."

- Plaintiff did not purchase or own the subject vehicle. Rather, the U.S. Forest Service purchased and owned the subject vehicle.

- On November 1, 2016, Plaintiff was driving the subject vehicle on Highway 84 in Rio Arriba County, New Mexico, and the vehicle collided with wildlife.

- The subject vehicle's airbags and seatbelt pretensioners did not deploy as a result of the collision.

- Plaintiff testified the airbag warning lamp was not illuminated on the subject vehicle's dashboard before the crash at issue.

- Plaintiff testified he never read the portions of the owner's manual regarding airbags or seatbelts in the four months he drove the subject vehicle as part of his job duties.

---

[2] For ease of reading, the Court omits references to supporting exhibits.

- Plaintiff has designated only one retained expert in this lawsuit, Dr. Jahan Rasty. *See* Plaintiff's Initial disclosure of Retained Experts (Doc. 117-1); Plaintiff's Supplemental Expert Disclosures.[3]

Plaintiff disputes about half of Defendant's 19 "Undisputed Facts" but the Court finds none of them material or relevant.  For example, Defendant offers Undisputed Fact 3 which states that:

> [n]on-party [TRW Automotive] conducted end-of-line testing on each and every ORC it supplied to FCA US, including the subject ORC, Serial No. MF130202473, as reflected in documents produced by TRW in response to a subpoena.

Doc. 200 at 3, ¶3.  Plaintiff "denies" this statement of fact on grounds of hearsay and double hearsay, even though the statement was made by Lisa Fodale, Defendant's corporate representative, in her Declaration, who states she has personal knowledge of the matter. *See* Doc. 200-2, ¶4.[4]  Plaintiff's objections are also misguided at this summary judgment stage, where affidavits that are often inadmissible at trial as hearsay may be submitted in support of summary judgment. *See Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005).

Another meritless factual "dispute" is Plaintiff's response to Defendant's Undisputed Fact 11.  Fact 11 states:

> In this lawsuit, Plaintiff alleges that an unspecified defect in the subject vehicle prevented the driver's airbag and seatbelt pretensioner from deploying.

Doc. 200 at 3.  Plaintiff "denies" this fact:

> . . . the subject vehicle was defective because it "posed an unreasonable risk of injury due to the fact that the airbag installed with the vehicle did not deploy when it was needed and when it should have deployed . . .[and] no reasonably prudent person having full knowledge of the risk posed by the [subject vehicle] would find the risk posed acceptable."

---

[3] Defendant does not include any information from Dr. Rasty's report in its "undisputed facts" section.

[4] Ms. Fodale is a Senior Specialist in Product Analysis for FCA US LLC, is familiar with the occupant restraint control system in the subject vehicle.  Her declaration contains information describing the various component systems for the vehicle and the statement that it passed end-of-line testing prior to shipping.

Doc. 238 at 3.  Plaintiff's response does not create any factual dispute here either, since Defendant states only that Plaintiff does not *specify* the particular defect alleged other than generically as the one that "prevented the driver's airbag and seatbelt pretensioner from deploying."

      B.      <u>Defendant's "Relevant Facts"</u>

The remainder of the significant facts offered by Defendant—and there are many—are relegated to 13 pages of a section offered by Defendant as "Relevant Factual and Procedural Background," including a section summarizing the procedural background in this case. Doc. 200 at 4-17.  These facts relate to a description of the  vehicle's component parts, how they function and the data obtained by post-crash testing of those components. *See* Doc. 238 at 4-17.  Plaintiff objects to the form in which these facts are listed and contends that Defendant failed to comply with this Court's local rule requiring the summary judgment movant to set out a concise and numbered recitation of the material facts and to refer to the record on which the movant relies. D.N.M.LR-Civ. 56.1(b)(2).

Plaintiff is technically correct that Defendant's "Relevant Facts" section does not formally comply with the Court's local rule because the facts in that section are not numbered individually. Nevertheless, the facts in that section are carefully categorized in discrete subsections and presented in an orderly and concise manner such that it would not have unduly taxed Plaintiff to respond to any of them which he disputed.  Also, some background facts on the subject vehicle components are central to Plaintiff's manufacturing defect claim, which charges that the ORC did not function properly and that as a result the driver's airbag and seatbelt pretensioner did not operate correctly.

The Court includes some of the more pertinent facts here.  Most of them are from testimony given by Lisa Fodale and John Hinger.  Ms. Fodale is an electrical engineer who was

employed by Defendant and worked as a Senior Specialist in Products Analysis (Doc. 200-1 (Fodale Depo.); Doc. 200-2 (Fodale Decl.). Mr. Hinger is a Principal Engineer at Hinger Engineer who performed a post-crash inspection of the Occupant Restraint Controller ("ORC"), airbag and seatbelt pretensioners on the subject vehicle using various proprietary diagnostic tools.   His Declaration (Doc. 200-9) thoroughly describes the inspection process and testing results.

### 1.    Seatbelt, ORC and Airbag

A seatbelt pretensioner is designed to remove slack from the seatbelt in the event of a motor-vehicle crash and is deployed only if the driver's airbag is deployed. The ORC is the component part in the vehicle that makes the decision whether to deploy the airbags and the seatbelt pretensioners. *Id.* at 27:8-28:11. The ORC "contains the microprocessor," which operates as a "computer for the impact sensing system," and is equipped with an "accelerometer" that constantly measures the vehicle's change in deceleration. In addition, the subject vehicle is equipped with two "crush-zone sensors" in the front of the vehicle.  Like the ORC, the crush-zone sensors also contain "accelerometers" (also referred to as the "remote front accelerometers") that constantly measure any change in deceleration.  When the vehicle is in the ignition "on" position and the ORC has power, the crush-zone sensors and the ORC accelerometer continuously provide deceleration information to the ORC.

Plaintiff offers no facts rebutting any of this testimony.

### 2.    Deployment of Airbag and Relationship to "BEV" threshold

As expressly noted in the 2012 Ram Owner's Manual, the frontal airbag does not deploy in every frontal collision—including collisions that may produce substantial vehicle damage. Doc. 200-3 at 62. On the other hand, airbags may deploy in crashes that sustain little vehicle front-end damage where a severe initial deceleration occurs. *Id.*  All crashes are unique, and the velocity

of the vehicle at impact is not the sole measurement for determining whether the airbag will deploy. Doc. 200-2, ¶14 (Fodale Decl.). Further, because of the risk of injuries from an airbag deployment, airbag systems are designed to only deploy in crashes where the benefit of an airbag deployment likely outweighs the risk of injuries an occupant may sustain as a result of the airbag deployment. Doc. 200-9, ¶9 (Hinger Decl.).

The decision of whether to deploy is based upon various sets of criteria, including safety criteria for deployment established by Defendant FCA US, the Federal Motor Vehicle Safety Standard, the Insurance Institute for Highway Safety and the New Car Assessment Program. Doc. 200-1 at 29:4-22.

With specific regard to deceleration of the vehicle, the ORC is programmed to always deploy the airbags and seatbelt pretensioners in *full frontal impacts when the longitudinal deceleration that is measured is equivalent to a vehicle impacting a fixed, flat barrier at 16 m.p.h. or greater.* That measurement or threshold is referred to as "barrier equivalent velocity" or "BEV." However, even a five m.p.h change in velocity – will not deploy the driver's airbag and seatbelt pretensioner. Doc. 200-2 (Fodale (Decl.) at ¶23. Under the performance specifications for the subject vehicle, the "must deploy threshold" is for a 16 mile-per-hour **barrier equivalent velocity flat front test.** Doc. 200-1 (Fodale Depo.) at 28:25-29:2 (emphasis added).

Plaintiff offers no facts rebutting this testimony.

### 3.    ORC's Recording Functions

In addition to the functions discussed above, the ORC also continuously monitors and diagnoses the vehicle's electrical system for any malfunctions, including any malfunction(s) in the air-bag initiator, the pretensioner initiator, the crash-zone accelerometers, the airbag warning lamp ("ABWL"), and the ORC electronics. If a malfunction in the vehicle's restraint system

occurs, the ORC expressly alerts the driver by illuminating the ABWL, and a Diagnostic Trouble Code ("DTC") is stored in the ORC. The ORC also stores an Event Data Record ("EDR"), which provides important information about the vehicle at the time of the event, including whether a seatbelt was buckled, whether the ABWL was on or off, and whether the airbag deployed.

Plaintiff offers no facts rebutting this testimony, either.

### 4. Data Obtained from Subject Vehicle

A WiTech tool is a proprietary diagnostic tool that can be used in order to obtain stored information from a vehicle's ORC. This information appears on a computer-type screen and can be printed as a report.

The WiTech report from the subject vehicle showed four DTCs, but all four of the DTCs occurred after the subject crash and did not play any role in the non-deployment of the driver's airbag or seatbelt pretensioner. *See* Doc. 200-9 (Hinger Decl.) at ¶6; Rather, the codes were created/stored after the subject collision. *Id.* Also, the stored DTCs were not internal faults that would not have prevented the ORC from storing an EDR. *Id.*

In addition to obtaining information using the WiTech tool, a Bosch Crash Data Retrieval tool and software ("Bosch CDR") can be used in order to obtain any stored EDR data from the subject vehicle.

After the crash at issue here, FCA US used a Bosch CDR on the subject vehicle, which confirmed there was no EDR data stored on the ORC. Doc. 200-2 (Fodale Decl. at ¶ 28). The post-crash vehicle inspection confirmed that the airbag system in the subject vehicle "functioned as designed." Doc. 200-1 (Fodale Depo.) at 103:22-104:12; Doc. 200-9 (Hinger Decl.) (confirming post-crash "proper operation of the airbag system and seatbelt pretensioners"). Testing also confirmed that the warning lamp in the vehicle was found to be fully functional and

properly operating ( *see* Doc. 200 at 12; Doc. 200-9, ¶8) which is consistent with Plaintiff's deposition testimony that the airbag warning lamp was not illuminated on the subject vehicle's dashboard before the crash, *see* Doc. 200-5 at 213:6-8.

Plaintiff offers no evidence suggesting any dispute of facts for this section.

## IV.   Plaintiff's "Undisputed" Facts

Plaintiff offers his own "Statement of Genuinely Disputed Facts."  None of the facts presented is sufficient to rebut any of the material facts presented by Defendant.  There is no point in going through each of the 23 facts in this section, but the Court offers a few as examples, along with Defendant's responses to those facts as examples of their irrelevancy:

- Plaintiff's Facts 1 and 2 (how fast the vehicle was traveling, and the number of elk that hit the vehicle): Defendant responds that (a) these facts are not material and (2) Plaintiff's allegations on these "facts" have repeatedly changed, noting that the Court denied Plaintiff's last request to amend.

- Plaintiff's Fact 3 (stating that the force generated by the collision should have caused the Airbag Control Module ("ACM") to record the collision and that according to Ms. Fodale, every collision that will—or should—cause the airbag and seatbelt to engage will be recorded by the ACM):  Defendant correctly observes that this statement mischaracterizes Lisa Fodale's testimony, which was that the collision was not recorded because the force was not sufficient to deploy the airbag and seatbelt pretensioner.  Doc. 200-1 at 103:2-104:12.[5] Ms. Fodale said nothing either in her Declaration or Deposition suggesting that the force of the collision should have triggered the ACM to record the event.

---

[5]  Plaintiff's counsel asked Ms. Fodale during deposition:  "Do you have an explanation about why this event was not recorded?—to which Ms. Fodale responded:

> . . . what I can state is that this 2012 Dodge Ram has an event data recorder and it records an event under one of either of these two conditions. One is the deployment of an airbag. And the second is if the delta-v or the change in velocity, at the ORC meet or exceeds a five mile-an-hour ... change within a 150 millisecond time window, then it will record an event. So based on the fact that we have none, I can make the conclusion that the airbags did not deploy in the vehicle and that the delta-v or change in velocity of the subject incident or accident, during that time the delta-v did not meet or exceed a five mile-an-hour within a 150-millissecond time window.

Doc. 238-3 at 76-77.  In other words, Plaintiff infers that the ORC did not record the incident because it was defective based on Ms. Fodale's testimony; but Ms. Fodale's actual testimony was that the ORC did not record because the deceleration threshold was insufficient to deploy the airbag. Plaintiff's statement in Fact 3 attributes statements to Ms. Fodale that she did not make or infer.

- Plaintiff's Fact 17 (stating that Plaintiff "began to lose consciousness when the first responder . . . arrived at the scene and continued to deteriorate . . . ."): Defendant correctly responds to Plaintiff's fact by noting that (a) the fact is not material and (2) Plaintiff's misstates the evidence because the witness in the cited exhibit actually stated "I cannot honestly recall" whether Plaintiff started to go unconscious at the scene.

- Plaintiff's Facts 7 and 16: (claiming that Ms. Fodale testified that *no* wild game impacts would cause the seatbelt or airbag to engage). However, Ms. Fodale actually said that the ORC was programmed not to deploy if the vehicle is traveling 30 mph or slower and impacts a "non-fixed" object weighing 140 pounds. Doc. 220-1 at 73:19-75; 20:1-25. As Defendant noted at oral argument, there is "zero testimony from any witness . . . stating or even suggesting" that the airbag was designed *never* to deploy in any and all wild game impacts.

- Plaintiff's Fact 8 (claiming that Defendant decided that wild game impacts will be "no deploy" events and that if there was deployment caused by a wild game impact test, Defendant would "recalibrate the calibration to ensure that it stayed as a no deployment." Doc. 238-3 at 71-73): Defendant responds that the fact misstates the evidence. Ms. Fodale actually testified that the company would "recalibrate the calibration" only if the airbag deployed during the crash test that required a vehicle traveling at 30 mph to impact a non-fixed object weighing 140 pounds. Doc. 200-1 at 19-24; 28:19-29:2 & 73:1-5; Doc. 200-2 at ¶ 20; 238-3 at 103:3-24.

- Plaintiff's Facts 5 and 9 (stating that the only wild game impact testing performed by Defendant was to run a vehicle at 30 m.p.h. into a 140 pound sandbag on stilts).  Defendant responds that this is misleading, since various types of wild game impact testing were conducted in low-severity tests to ensure the airbag did not improperly or inadvertently deploy. *See* Doc. 238-3 (Fodale Depo.) at 71:7-16 ("We have our barrier tests and we have the wild game tests and then we have the whole inadvertent series tests").

- Plaintiff's Facts 6 and 12 (claiming that Defendant decides when the system will not deploy): Defendant characterizes this statement as incomplete, and the Court would add that it is misleading as well.  Plaintiff's statement completely ignores undisputed evidence that the "no deploy" threshold is *not* arbitrarily decided by Defendant.  Rather, it is guided by a large number of safety criteria and data provided by Defendant provides to the vehicle's supplier in order to create model-specific calibration.  These criteria include: the "barrier equivalent velocity" measurement (or "BEV") that corresponds to a vehicle impacting a fixed, flat barrier at 16 m.p.h. or greater; "inadvertent testing, which is rough road, washout, curb hits . . . and wild game hit."  Doc. 200-1 at 28-29; and federal and state requirements (Federal Motor Vehicle Safety Standard; National Highway Transportation Safety Administration's New Car Assessment Program; Insurance Institute for Highway Safety).  *Id.* at 29:18-22.  Moreover, Plaintiff offers no evidence to dispute Defendant's reliance on this criteria.

The rest of Plaintiff's "Undisputed Facts" suffer from the same evidentiary infirmities as those described above, including some "undisputed facts" relating to a design defect theory which Plaintiff is barred from continuing to pursue.

## V.   Expert Testimony Requirement

Before turning to the merits of Plaintiff's claims, the Court finds it necessary to address an issue related to the kind of evidence required for Plaintiff to prove his claims and withstand summary judgment.

### A.   Plaintiff's "Common Sense" Theory of Proof

At oral argument, both parties referenced two New Mexico jury instructions relevant to products liability cases: NM UJI 13-1406 and 13-1407.   The first, 13-1406, states that a supplier in the business of putting a product on the market is liable for harm caused by an unreasonable risk of injury. The second, 13-1407, defines an "unreasonable risk of injury" as one which a reasonably prudent person, having full knowledge of the risk would find unacceptable.

Plaintiff maintains that a layperson's "common sense and experience" are sufficient to establish both the existence of a defect in the vehicle he was driving as well as whether this defect was responsible for his injuries.[6] Defendant argues that a layperson simply does not have the full knowledge of the risk involved in both the deployment and the nondeployment of airbags.  For example, a jury would need to know first and foremost—at what BEV level was the vehicle traveling on impact?  A layperson would also not know whether an airbag that should deploy at a certain threshold had reached that threshold when the accident occurred.  In this case, Plaintiff offers no evidence that the vehicle exceeded the must-deploy threshold, and common sense cannot

---

[6]  To the extent Plaintiff relies on the "consumer expectation" test, that test has been rejected in New Mexico. *Brooks v. Beech Aircraft Corp.*, 1995-NMSC-043, ¶ 31, 120 N.M. 372, 379, 902 P.2d 54, 61.

provide that information. Plaintiff contends that it's common knowledge that it's against the law to drive without using your seat belt, but a layperson would not know what physical forces and deceleration forces should trigger airbag deployment (whether or not the driver was using a seatbelt), or whether the seat belt assembly mechanism was functioning properly if the airbag did not deploy.

Plaintiff offers no legal authority to support his position that common sense can be used to prove a case involving air bag deployment, whereas legal authority exists to the contrary:

> "Air bag failures are not the type of defect within the realm of a juror's common experience." *Ruminer v. Gen. Motors Corp.*, No. 4:03-CV-00349 GTE, 2006 WL 8444956, at *3 (E.D. Ark. Jan. 17, 2006), *aff'd by,* 483 F.3d 561 (8th Cir. 2007) ("The system design and determination of the particular threshold at which a given vehicle's air bag will, and should, deploy is not a matter of common sense," and "[n]umerous and complicated factors go into the equation."

> " . . . as the district court noted, the intricacies of occupant protection systems and their potential design or manufacturing defects are outside the realm of a juror's everyday experience." *Ruminer v. Gen. Motors Corp.*, 483 F.3d 561, 565 (8th Cir. 2007)

> "Whether air bags failed to deploy because of a defect is beyond the common understanding of a lay person." *Thomas v. Gen. Motors Corp.,* No. 5:05CV000136 SWW, 2006 WL 8444900, at *2 (E.D. Ark. Apr. 27, 2006).[7]

Even in a design defect case (assuming Plaintiff were allowed to pursue this theory), common sense would fail to provide answers to questions that are pertinent to a design defect theory as well, such as: At what BEV level *should* the airbag have deployed? Ms. Fodale testified that the vehicle's ORC was programmed not to deploy if the vehicle is traveling 30 mph or slower and impacts a "non-fixed" object weighing 140 pounds. Doc. 220-1 at 73:19-75; 20:1-25.  That said, if the vehicle were designed to deploy at lower level, what are the risks and benefits?

---

[7] In its reply, Defendant cites to numerous courts concluding that air bag failures are not the type of defect within the realm of a juror's common experience, *see* Doc. 240 at 8, n.1 (citing to various state and federal courts).

John Hinger, the engineer who performed the post-crash inspection of the ORC in the vehicle that crashed, testified in his deposition that because of the risk of injuries from an airbag deployment, airbag systems are designed to only deploy in crashes where the benefit of an airbag deployment likely outweighs the risk of injuries an occupant may sustain as a result of the airbag deployment.  At oral argument, defense counsel raised some typical concerns associated with airbag deployment at lower thresholds, for example: Is there a risk of the airbag deploying when the vehicle hits a pothole or curb?  Or – if the airbag is reprogrammed to deploy at a lower threshold, is there a risk of causing a more severe accident because the airbag deploys when the vehicle hits a movable object (such as an elk at higher speeds) and the driver is consequently unable to control the vehicle or bring it to a safe stop because there's an airbag in the driver's face?  In this case, Plaintiff did bring his vehicle to a safe stop.  Common sense would not answer whether Plaintiff would have still been able to come to a stop had the airbag deployed at a lower BEV threshold, and what the other consequences might have been.  Case law recognizes that airbag deployment can cause injury:

> *Quintana-Ruiz v. Hyundai Motor Corp.*, 303 F.3d 62 (1st Cir. 2002) (manufacturer met burden of showing that benefits accruing from airbag's design outweighed the risks where passenger injured wrist when airbag deployed and where airbag operated the way it was designed);

> *Demaree v. Toyota Motor Corp.*, 37 F. Supp. 2d 959, 967 (W.D. Ky. 1999) (noting it was undisputed that airbags can cause injury when they deploy);

> *Morris v. Mitsubishi Motors N. Am., Inc.*, 782 F. Supp. 2d 1149, 1156 (E.D. Wash. 2011) (failure to employ a front crush zone sensor in this airbag sensing system led to the failure of the frontal airbag by making the system overly sensitive to insure timely pole impact deployments, thus resulting in inadvertent deployments under other, untested crash conditions);

*Quintana-Ruiz v. Hyundai Motor Corp.*, 303 F.3d 62, 67 (1st Cir. 2002) (acknowledging that there have been injuries and some deaths caused by deployment of airbags).[8]

Thus, Plaintiff's reliance on "common sense" to prove his case makes no sense at all when considering the questions that must be addressed and resolved, and it is contrary to the relevant case law.

B.      Expert Required to Establish Causation

Plaintiff also claims that the jury can find the existence of a vehicle defect without the aid of expert testimony and based on the facts alone:

> [T]he facts show Plaintiff's severe and permanent injuries are most likely the result of hitting the steering wheel and other hard surfaces inside the vehicle. The parties agree that the pre-tensioner and airbag did not engage, meaning they did not protect and restrain Plaintiff's head and body.

Doc. 238 (Resp.) at 10.  While the "facts" may show that Plaintiff's injuries are the result of his body's impact with parts of the vehicle's interior, they do not show that the reason for the impact (and Plaintiff's injuries) was a *defect* in the vehicle's system or components that prevented the airbag and seatbelt pretensioners from deploying as they should have.  That is, Plaintiff expects to prove his case by asking a jury to conclude that there *must have been a defect* in the vehicle's ORC simply because he hit the steering wheel and inside surfaces of the vehicle.

New Mexico precedent is clear and unequivocal: expert testimony is required to prove Plaintiff's case.  In 1983, the New Mexico Court of Appeals held in *Duran vs. General Motors* as a matter of first impression, that automobile manufacturers could be held liable when a faulty

---

[8] Potential injuries to children from airbag deployment require even more specialized analysis and considerations, including not only age but body size and weight of the little passenger as well, as noted in this article from the National Library of Medicine at the National Institute of Health.  *See* https://pubmed.ncbi.nlm.nih.gov/15930219/; Craig Newgard, Roger Lewis, Effects of Child Age and  Body Size on Serious Injury from Passenger Air-bag Presence in Motor Vehicle Crashes, PMID 15930219; DOI: 10.1542/peds.2004-0555.  Although the case at bar does not involve children, the Court raises this point to illustrate further than the manufacturing and design of airbags are far beyond the scope of common knowledge.

design or manufacture, although not causing the accident, produces or enhances an injury received in the accident. 1983-NMCA-121, ¶ 48, 101 N.M. 742, 753, 688 P.2d 779, 790 (same).   In *Duran*, the Court of Appeals joined the majority of jurisdictions in adopting the "crashworthiness doctrine" or "enhanced injury doctrine" and held that expert testimony is required to establish an enhanced injury because that issue is beyond common knowledge of a layperson and without expert testimony the jury would be required to speculate and stack inference upon inference. 1983-NMCA-121, ¶ 11, 101 N.M. 742, 745, 688 P.2d 779, 782, writ quashed, 101 N.M. 555, 685 P.2d 963 (1984), *overruled on other grounds by Brooks v. Beech Aircraft Corp.*, 1995-NMSC-043, ¶ 11, 120 N.M. 372, 902 P.2d 54.

At oral argument, Plaintiff stated that the holding in *Duran* is no longer the law in New Mexico and was overturned by *Brooks v. Beech Aircraft Corporation*.  That statement is only partially accurate, and totally inaccurate in the context of this case.  The *Duran* Court ruled that crashworthiness claims sound only in negligence regardless of whether the injury in the second collision was caused or enhanced by a design defect or by a manufacturing flaw. 101 N.M. at 749, 688 P.2d at 786.  *Brooks* overturned *Duran* only in its holding that a design defect claim may be brought in both negligence and strict liability.  This part of *Duran's* holding has no bearing on any of the issues in this case, and so *Duran's* holding on the requirement of expert testimony for vehicle products liability cases is still precedent in New Mexico, and still good law. *See Heer v. Costco Wholesale Corp.*, 589 F. App'x 854, 864 (10th Cir. 2014) (granting defendants' motion for summary judgment under New Mexico law where plaintiff failed to present expert opinion showing a genuine issue as to existence of defect).[9]

---

[9] *See also Am. Mech. Sols., L.L.C. v. Northland Process Piping, Inc.*, 184 F. Supp. 3d 1030, 1061 (D.N.M. 2016) ("New Mexico, along with other jurisdictions, has required expert testimony when the issue of causation is presented in a context which is not a matter of common knowledge"); *Foreman v. Worthington*

Plaintiff maintains that he can prove a causal connection between a defect in the vehicle's airbag mechanism and his injuries either by relying on lay opinions and circumstantial evidence, or simply by having the jury deduce causation as being more likely than not "given that no one has presented any other credible explanation of the cause of Plaintiff's severe injuries." Doc. 238 at 10-11.[10]  The legal authority he offers, however, are not helpful.  Plaintiff relies on *Toppino v. Herhahn*, in which the New Mexico Supreme Court stated that expert testimony is not mandatory in every case of medical malpractice and is not essential "if negligence can be determined by resort to common knowledge ordinarily possessed by an average person . . . ." 1983–NMSC–079, 100 N.M. 564, 673 P.2d 1297.  As just discussed, common knowledge does not include BEV thresholds and their relationship to airbag deployment.

Plaintiff also offers *Romero v. State*, a car accident case which posed the question of whether passenger intoxication contributed to causing the accident where a curve in the roadway presented a sudden and unexpected peril—and which has absolutely nothing to do with expert testimony in a products liability case. 1991-NMCA-042, 112 N.M. 291, 814 P.2d 1019, *aff'd in part, rev'd in part,* 1991-NMSC-071, 112 N.M. 332, 815 P.2d 628.

*Rudisaile v. Hawk Aviation, Inc., is* a strict liability case involving the wrongful death of a pilot killed in a rented airplane. 92 N.M. 575, 576, 592 P.2d 175, 176 (1979), *abrogated on*

---

*Cylinders Wisconsin, LLC,* No. CV 11-339 BB/WDS, 2012 WL 13080072, at *2 (D.N.M. July 30, 2012) (granting summary judgment because "[the plaintiff] has not disclosed any experts who could testify at trial that a defect existed in the blowtorch at the time of sale, or that a defect caused the fire"); *Barnett v. Kumho Tire USA, Inc*., No. CV 03-1459 LCS/LAM, 2005 WL 8164394, at *5 (D.N.M. Jan. 20, 2005) (absent excluded expert testimony regarding the existence of a defect, it did not appear that a jury could reasonably make the necessary inference that a defect existed in the subject tire and granting summary judgment to defendant).

[10] This lay testimony would include statements made by the first responder on the accident scene who noted that the vehicle's airbag did not deploy.  *See* Doc. 238-8 at 5:23-24. That individual has not been identified as an expert, nor is there any indication that the individual is qualified to express any opinion as to whether or not the air bag should have been deployed or to opine on the movement of Plaintiff's body in the crash sequence.

*other grounds by Livingston v. Begay*, 1982-NMSC-121, ¶ 11, 98 N.M. 712, 652 P.2d 734.  In

that case*,* the New Mexico Supreme Court held that where a product is unreasonably dangerous,

a plaintiff need not prove *both* that a product is "unreasonably dangerous" and "necessarily

defective." 92 N.M. at 576 (a plaintiff may, but is not required to prove defectiveness "as a

*separate* matter" (emphasis added).  Plaintiff contends that *Rudisaile* allows him to forego the

need to prove defectiveness—but he doesn't explain how he intends to go about proving that the

vehicle is unreasonably dangerous without presenting any evidence.

   Straying far from New Mexico law which governs this case,[11] Plaintiff also offers

*Momah v. Massena Mem'l Hosp*., where the court stated that expect testimony was needed to

"demonstrate merit" in a legal malpractice case, and that it was the "rare exception" where the

"ordinary experience of the fact-finder" would be sufficient to prove the case.  No. 95-CV-1438,

2000 WL 306774, at *4 (N.D.N.Y. Mar. 13, 2000). This case has nothing to do with products

liability, and it also undercuts Plaintiff's position because it actually *supports* the requirement of

expert testimony as the general rule.[12]

   The Court finds thus far that Plaintiff has presented no evidence to dispute Defendant's set

of facts. What remains now is for the Court to determine whether Dr. Rasty's initial report and

---

 The accident occurred in New Mexico, and the parties agree that New Mexico law governs.  Doc. 27 (Jt. Status Rep't at 3.

[12] Six weeks after oral argument, Plaintiff filed a "Notice of Supplemental Authorities" listing several cases which purportedly support his position that "causation can be established through circumstantial evidence in this case." Doc. 252 at 1.  None of these cases are consistent with that position.  Either they are not products liability cases, *see Desert Palace, Inc. v. Costa,* 539 U.S. 90, 100 (2003) (the adequacy of circumstantial evidence in Title VII cases); or they are not vehicle products liability cases, *see Herr v. Costco,* 589 Fed.Appx. 854, 863 (10th Cir. 2014) (defective step stool); or else they are cases where a layperson would adequately determine whether a defect existed based on sufficient circumstantial evidence, *see Rivera v. Volvo Cars of North America, LLC,* 2016 U.S. Dist. LEXIS 189372 No. 13-397 (2016) (tire blow-out).  It should be clear from the discussion and evidence presented here that the airbag system in Plaintiff's vehicle was complex and highly sensitive and operated on a level way beyond the grasp of a layperson to decide whether the airbag did not deploy because it was defective.

opinion provide any information that would allow Plaintiff to withstand summary judgment on

Plaintiff's claims of (1) manufacturing defect; and (2) breach of implied and express warranties.

## VI.   Manufacturing Defect

The essence of Plaintiff's allegations is that:

(1) on November 1, 2016, he was driving the vehicle at issue "at the post[ed] speed limits";

(2) the subject vehicle "hit two (2) Elk head on" (Doc. 43 at ¶¶ 5-6);

(3) the driver's airbag "did not deploy despite the fact Plaintiff was traveling at highway speeds and despite the fact that the collision with the Elk caused heavy damage to the front end of the vehicle," *id.*; and

(4) the force of this collision should have been sufficient to activate the ACM and engage the safety devices – but that did not happen.

There are two questions a jury must answer regarding Plaintiff's manufacturing defect

claim:

(1) whether a defect prevented the driver's airbag and seatbelt pretensioner from deploying; and

(2) whether the nondeployment of the airbag and seatbelt pretensioner proximately caused Plaintiff's alleged injuries.[13]

To prevail on a strict product liability theory under New Mexico law, a plaintiff must

present sufficient evidence to support each of the following elements: (1) the product was

defective; (2) the product was defective when it left the defendant's hands and was substantially

unchanged when it reached plaintiff; (3) the product, because of the defect, was unreasonably

dangerous; (4) plaintiff suffered injury; and (5) the product's defective condition was [the]

---

[13] Plaintiff also argues that summary judgment is not proper because all of the 2012 Dodge Ram 1500 pickup trucks were intentionally equipped with an occupant restraint system that would not deploy "in the event that there was a collision with large game animals" such as the elk(s) that hit his car. Doc. 238 at p. 17. However, this argument is tied only to a design-defect theory, which Plaintiff is precluded from advancing for reasons given in the above discussion.

proximate cause [of her injuries]." *Figueroa v. Ethicon, Inc.*, No. 2:19-CV-01188 KWR/KRS, 2020 WL 1434249, at *2 (D.N.M. Mar. 24, 2020).

The mere fact that a failure occurred is "insufficient to support a strict products liability claim." *Pac. Indem. Co. v. Therm-O-Disc, Inc.*, 476 F.Supp.2d 1216, 1229 (D.N.M. 2006); *Rivera v. Volvo Cars of N. Am., LLC*, No. 13-00397 KG/KBM, 2015 WL 11118064, at *5 (D.N.M. June 18, 2015) (product is not defective "simply because it is *possible* to be harmed by it."  Rather, "a plaintiff must prove that a defect in the product as manufactured, designed, or marketed created an unreasonably dangerous risk of injury.") (emphasis in original); *Rimbert v. Eli Lilly & Co.*, 577 F.Supp.2d 1174, 1202 (D.N.M. 2008) (proximate cause is a required element in a strict liability cause of action).  An unreasonable risk of injury is a risk "which a reasonably prudent person having full knowledge of the risk would find unacceptable." *Pac. Indem. Co.*, 476 F.Supp.2d at 1224.

A.   Liability

In order to preclude summary judgment, Plaintiff must present a material dispute of fact as to whether a defect prevented the driver's airbag and seatbelt pretensioner from deploying.

Plaintiff faces two obstacles.  First, Plaintiff himself expressly admitted that he has no proof of a manufacturing defect.  In his April 2019 responses to interrogatories, Plaintiff stated that it was "impossible to determine whether the Occupant Restraint System components did not function as designed due to manufacturing defect." Doc. 200-4 at 7, No. 10.  Discovery is now closed, and Plaintiff never supplemented that response to Defendant.

Second, Plaintiff presents no evidence to support his manufacturing defect claim in his response to summary judgment, which he must do in order to withstand dismissal of his claim. *See Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (once moving

party meets its burden, "the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant").

       *1.*    *Defendant's Evidence*

Defendant contends that there is no evidence that a defect in the subject vehicle prevented the driver's airbag and seatbelt pretensioners from deploying the crash at issue and presents a considerable amount of evidence supporting this position. The supplier's end-of-line testing records for the specific ORC at issue in this lawsuit (Serial No. MF130202473) confirm the subject ORC passed all tests and was properly functioning at the time it was shipped to FCA US's assembly plant. Doc. 200-2 (Fodale Decl.) at ¶31. After the ORC is assembled into a vehicle and prior to shipping the vehicle, Defendant FCA US conducts its own end-of-line testing in order to confirm: (1) each ORC is functional; (2) the air bag warning lamp is "off;" and (3) there are no "diagnostic trouble codes" ("DTC's") in the ORC. *Id.* at 32.

The data obtained post-crash from the subject vehicle indicated that the airbag system and seatbelt pretensioners were properly operating. Doc. 200-9 (Hinger Decl.). Testing also confirmed that the warning lamp (the "ABWL") in the vehicle was found to be fully functional and properly operating (*see* Doc. 200 at 12; Doc. 200-9, ¶8). This testing result is consistent with Plaintiff's deposition testimony that the airbag warning lamp was not illuminated on the subject vehicle's dashboard before the crash, *see* Doc. 200-5 at 213:6-8.

While the WiTech report from the subject vehicle showed four "diagnostic trouble codes" ("DTC"), these did not play any role in the non-deployment of the driver's airbag or seatbelt pretensioners because the codes were created or stored *after* the collision. Doc. 200-9 (Hinger Decl.) at ¶6. Moreover, the stored DTCs were not internal faults that would not have prevented the ORC from storing information ("EDR" data) such as whether the ABWL was illuminated or

whether an airbag deployed.  *Id*.  After the crash at issue, Defendant confirmed that there was no

EDR data stored on the ORC, Doc. 200-2 (Fodale Decl.) at ¶ 28, and concluded that the airbag

system in the subject vehicle "functioned as designed."  Doc. 200-1 at 103:22-104:12.

Plaintiff offers no contrary evidence to rebut Defendant's evidence either on the post-crash

testing methods or the results.

### 2.    *Plaintiff's Evidence*

Plaintiff relies completely on Dr. Rasty's expert report to support his manufacturing defect

claim.  In that report, Dr. Rasty stated:

> I am writing this letter to express my thoughts and opinions regarding the probable
> threshold of the delta-V experienced by Mr. Roy Munoz's 2012 Dodge Quad Cab
> 1500 4x4 (VIN: 1C6RD7FPSCS290440) (hereinafter referred to as the 'Subject
> vehicle') during the Subject accident and whether the vehicle's onboard Airbag
> Control Module (ACM) **should have, at a minimum, recorded an event.**

Doc. 117-2 (emphasis added). Dr. Rasty offered these conclusions in his report:

1. There is no physical evidence consistent with passenger restraint systems being
activated during the Subject collision.

2. The preliminary analysis of the delta-V experienced by the Subject vehicle is within the
range of the threshold for event data to be recorded to the ACM and yet a download of the Subject
vehicle's ACM reveals no recorded events.

3. In order to validate and finalize the above analysis and opinions, the following
documents need to be made available: deposition of Mr. Munoz and RAM ACM delta-V
thresholds for passenger restraint system activation (including but not limited to seatbelt
pretensioners and airbags).

4. All opinions stated above are within a reasonable degree of engineering and scientific
certainty.

Doc. 117-2 at 4.  In addition, Plaintiff subsequently produced an email from Dr. Rasty's assistant

adjusting his delta-V calculation as follows: "65 mph = 8.38 delta- V;" "75 mph = 9.69 mph;"

and "85 mph = 10.97 delta-V." *See id.*

Plaintiff argues that the amount of "delta-V" force generated in the accident was more than sufficient to activate the ORC, and therefore non-deployment means the ORC was defective. The problem for Plaintiff is that Dr. Rasty's testimony regarding the "delta-V" of the vehicle and his statement that the ACM Module should have recorded an event does not correlate with any of the evidence on the record regarding the BEV or deceleration threshold for airbag deployment.[14] Dr. Rasty never explained how his "delta-V" calculation translates to a manufacturing defect in the airbag—only that more information should have been recorded.  As a result, Plaintiff cannot withstand summary judgment for several reasons.

First, contrary to what Plaintiff argues, there is no "conflict" in the presented expert testimony that would preclude summary judgment.  Generally speaking, summary judgment is not advisable in situations where there is a conflict in expert testimony, even when the evidence leans one way. *See Zuchel v. Spinharne*y, 890 F.2d 273, 275 (10th Cir. 1989).  This situation is not present in the instant case.

Even when considering the evidence in the light most favorable to Plaintiff (as the Court must do here), the evidence is completely one-sided in favor of Defendant.  *See Gillogly vs. GE Capital Assurance*, 430 F.3d 1284 (10th Cir. 2005) (quoting *Conoco Inc. v. ONEOK, Inc.*, 91 F.3d 1405, 1407 (10th Cir. 1996) (A party can obtain judgment as a matter of law in its favor "only if the proof is all one way or so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion"); *Carey v. U.S. Postal Serv.,* 812 F.2d 621, 623 (10th Cir. 1987) (Whether there is a genuine factual dispute depends on whether the evidence presents a sufficient

---

[14] The BEV is not the same measurement as a "delta-V" measurement.  As Ms. Fodale stated in her deposition, a "delta-V" is simply a change in velocity.  Doc. 200-1 at 27:1-5.  As explained previously, the BEV (or "barrier equivalent velocity") measurement refers to a *threshold* that is equivalent to a vehicle impacting a fixed, flat barrier at 16 m.p.h.

disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law).

Dr. Rasty's conclusions regarding the delta-V force and the recording functions on the vehicle are not inconsistent with Defendant's position—which is that the deceleration change (the BEV measurement) was not sufficient to deploy the airbag. Dr. Rasty's sole opinion addresses whether the airbag control module should have *recorded* an event. However, this case is not about whether a defect prevented the ORC from storing or *recording* information, but rather whether a defect caused a malfunction in the airbag or seatbelt components. Dr. Rasty offers no opinion on the only two issues that matter on this claim: whether the driver's airbag should have deployed, and whether the seatbelt pretensioner should have engaged differently. *See* Docs. 117-2, 117-4. He never investigated how the assembly of the driver's airbag and seatbelt pretensioner deviated in some way from Defendant's specifications and therefore can offer no evidence regarding whether the airbag and seatbelt pretensioners *should have* deployed. *See* Doc. 117-2. He offers no evidence to dispute the testimony of either Ms. Fodale and Mr. Hinger, both of whom testified that the airbag system and seatbelt pretensioners were fully operational and functioned as designed at the time of the accident. *See, e.g.,* Doc. 200-1 (Fodale Depo.) at 103:22-104:12; Doc. 200-9 (Hinger Decl.) (confirming post-crash "proper operation of the airbag system and seatbelt pretensioners").

Second, Ms. Fodale testified in her deposition that air bag deployment is dependent on deceleration and that under the performance specifications for the subject vehicle, the "must deploy threshold" is for a "16 mile-per-hour **barrier equivalent velocity (BEV) flat front test**." Doc. 200-1 at 28:25-29:2 (emphasis added).  Given this testimony, which remains undisputed, Plaintiff would need expert testimony to show that hitting two elk head-on at Plaintiff's speed

would result in a deceleration delta that should have set off the air bag. No such expert testimony is presented by Plaintiff. Moreover, Dr. Rasty never analyzed whether the subject crash met the "barrier equivalent velocity" ("BEV") threshold to deploy the driver's airbag and seatbelt pretensioner in order to determine if it met the required deceleration-deployment threshold, nor did he provide any analysis or opinion establishing that the BEV deployment threshold for the vehicle was unreasonably dangerous. Plaintiff points out that every collision that will cause the airbag to deploy will be recorded by ACM, but he presents no evidence to dispute Ms. Fodale's testimony that the deceleration from this collision, based on the BEV, was not sufficient to deploy the airbag and seatbelt pretensioner in the subject vehicle. *See, e.g.*, Doc. 200-1 at 103:2-104:12.

Third, Dr. Rasty admitted that he was unable to validate or finalize his conclusions because he was not provided the "delta-V thresholds for passenger restraint activation (including but not limited to seatbelt pretensioners and airbags)." Thus, whatever the accuracy of his opinion might be or might have been, it has no application or relevance to the specific vehicle components at issue in this case: the seatbelt pretensioners and airbags.

The snag in this case is that elk are not fixed objects. Here, the question is whether there is a standard above which the air bag should deploy when car hits a non-fixed object. The unrefuted testimony in this case (provided by Ms. Fodale) is that when a car hits non-fixed object of 140 lb at 30 mph, there is no deployment. This does not necessarily mean that the airbag is supposed to deploy if a car is going over 30 and hits a non-fixed object weighing more than 140 lbs,, because there is no way to know (without expert testimony) whether a car going above the 140 lb / 30 mph threshold would have a deceleration sufficient to reach BEV for a non-fixed object. At the very least, Plaintiff would need to present expert testimony regarding the deceleration that would be caused by a head-on collision with a non-fixed object similar to 750

pounds of elk, but Plaintiff did not develop this line of testimony and Dr. Rasty's opinion offers nothing on this subject.

Plaintiff's failure to present any relevant expert opinion to support his claim secures summary judgment for Defendant on the liability issue. *Duran v. Gen. Motors Corp.*, 1983-NMCA-121, ¶ 48, 101 N.M. 742, 753, 688 P.2d 779, 790 (same) ("Without expert testimony, the jury would be left to stack inferences upon inferences. This is impermissible under prior holdings."), *writ quashed,* 101 N.M. 555, 685 P.2d 963 (1984), and *overruled on other grds.by Brooks v. Beech Aircraft Corp.*, 1995-NMSC-043, ¶ 48, 120 N.M. 372, 902 P.2d 54.  Without expert testimony on the relevant liability questions, Plaintiff cannot establish the first element of a manufacturing defect claim.  *See Foreman v. Worthington Cylinders Wisconsin, LLC*, No. CV 11-339 BB/WDS, 2012 WL 13080072, at *2 (D.N.M. July 30, 2012) (granting summary judgment where plaintiff failed to disclose any experts who could testify at trial that a defect existed in the blowtorch at the time of sale, or that a defect caused the fire").[15]

B.     Causation

The Court's analysis on Plaintiff's manufacturing defect claim could end at this point because Plaintiff has failed to present evidence on the liability issue. However, even if Plaintiff were to show evidence of a manufacturing defect sufficient to preclude summary judgment, he fails to present evidence that any such defect caused the collision.

---

[15] The Court acknowledges that there may be situations where a plaintiff might not need an expert.  For instance, if evidence showed that plaintiff hit a brick wall (a fixed object) going more than 16 mph and his air bag did not deploy, he might not need an expert.  In this scenario, the air bag did not deploy even though impact exceeded the defined standard for the no-deploy zone.

.

Plaintiff alleges that deployment of the airbag and seatbelt pretensioner "would have prevented" or reduced his alleged injuries. Doc. 200-4 at 3, No. 5.  As noted above, in New Mexico, the enhanced injury or "crashworthiness" doctrine has been applied in actions against product manufacturers." *Couch v. Astec Indus., Inc.*, 2002-NMCA-084, ¶ 30, 132 N.M. 631, 638, 53 P.3d 398, 405; *Am. Mech. Sols.*, 184 F.Supp.3d at 1061 (explaining same).  In order to establish an enhanced injury, a plaintiff must: (1) present evidence that a product defect caused injuries over and above those which otherwise would have been sustained, (2) demonstrate the degree of "enhancement," and (3) offer proof of what injuries, if any, would have resulted in any event. *Lujan v. Healthsouth Rehab. Corp.*, 1995-NMSC-057, ¶ 13, 120 N.M. 422, 426, 902 P.2d 1025, 1029; *accord, e.g., Bustos v. Hyundai Motor Co.*, 2010-NMCA-090, ¶ 29, 149 N.M. 1, 7, 243 P.3d 440, 446 (same).

Also as discussed above, Plaintiff must also present expert testimony on the causation element as well.  *See Am. Mech. Sols., L.L.C. v. Northland Process Piping, Inc.*, 184 F. Supp. 3d 1030 (D.N.M. 2016) (expert testimony is required to establish proximate causation in a breach of implied warranty of merchantability action where causation cannot be determined by resort to common knowledge that an average person ordinarily possesses); *Martinez v. Cont'l Tire the Americas, LLC*, 2020 WL 2572464, at *4 (D.N.M. May 21, 2020) (noting that biomechanical experts "have extensive knowledge about how human bodies move when forces are applied to them and thus may provide testimony as to how vehicle occupants move and are impacted in vehicular accidents").

Defendant contends that Plaintiff offers no expert testimony on the subject vehicle's lack of crashworthiness.  Plaintiff disagrees with Defendant's position, yet is unable to point to any

part of Dr. Rasty's opinion that would create a factual dispute.[16]  Instead, Plaintiff states that Dr. Rasty "can certainly explain why, as stated in his first report, the force of this collision and others like it should have been sufficient to activate the ACM and engage the safety devices, and this can help the jury understand the significance of the facts they are to consider." Doc. 238 at 10. Unfortunately for Plaintiff, the appropriate time for Dr. Rasty to present his explanation on causation has come and gone.  Dr. Rasty's causation "theory" was not included in Dr. Rasty's expert report, was never disclosed to Defendant, and the Court will not allow a jury to consider it now.

Even without the requirement of expert testimony, Plaintiff cannot establish causation. He testified in his deposition that he does not know how or why he suffered those alleged injuries in the crash sequence:

Q.     Okay. I want to talk with you about the movement of your body during the collision with the elk. Okay? And I know this happened quickly, but do you know whether any parts of your body struck any part of the vehicle?

A.     No, sir.

Q.     Okay. So you don't know whether your body contacted the dash panel or anything like that?

A.     No, sir.

Doc. 200-5 at 261:21-262:9.

Finally, as a last-ditch effort to present causation evidence, but to no avail, Plaintiff turns to the testimony of his treating physician. *See* Doc. 238 at 26 (offering treating physician testimony "regarding the conclusions [drawn] . . . as to the likely source of the Plaintiff's physical

---

[16] *See* Defendant's Fact 19, stating that Dr. Rasty did not provide any biomechanical opinions in this case addressing whether deployment of the driver's airbag and seatbelt pretensioner would have prevented Plaintiff's alleged injuries.

injuries, especially given his prior knowledge of Plaintiff's medical condition prior to the accident."). However, because the causation inquiry in Plaintiff's breach of warranty claims relates to the *subject vehicle* and not his medical treatment, testimony by his treating physician on these claims would be inappropriate and irrelevant:

> . . . a treating physician's testimony "related to causation is therefore confined to purposes of deciding course of treatment. Testimony by either Dr. Tart or Dr. Lanzi that the motor vehicle caused Plaintiff's medical conditions is improper as treating physician testimony because what happened in the motor vehicle accident is too remotely connected from anything learned through examination or assessment of Plaintiff and not necessarily integral to their treatment decisions.

Doc. 205 (Court's Mem. Opin. & Order) at 10.

Thus, considering all of Plaintiff's evidence in his favor, Defendant is entitled to summary judgment on Plaintiff's manufacturing defect claim because Plaintiff has failed to present any evidence of causation for this claim.

## VII.    Breach of Implied and Express Warranties:

Plaintiff contends that Defendant breached the implied and express warranties on the subject vehicle because the sales materials represented that the vehicle had a reliable occupant restraint system, including airbags and seatbelts, but these components did not properly function. *Id.* at p. 6, No. 11.

Express warranties are created by the seller making any affirmation of fact or promise to the buyer which relates to the goods and becomes part of the basis of the bargain. NMSA § 55-2-313.  A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  NMSA §55-2-313. As with Plaintiff's manufacturing defect claim, a breach of the implied warranty of merchantability claim requires proof of a defect. Moreover, a breach of the implied warrant of merchantability claim also requires proof of proximate cause." *Am. Mech. Sols., L.L.C. v. Northland Process Piping, Inc.*, 184

F.Supp.3d 1030, 1060 (D.N.M. 2016); *Garner v. Raven Indus., Inc.*, 732 F.2d 112, 114 (10th Cir.

1984) (plaintiff in a strict products liability case has the burden of proving all of elements of

claim).  Plaintiff specifically alleges that:

> [t]he Vehicle in question was warranted to have 'Advanced Multistage Front Airbags," and "because the airbags on the Dodge 1500 Ram the Plaintiff was driving did not deploy on a frontal impact, the Defendant breached this expressed warranty, along with the implied warranty of merchantability.

Doc. 43 at ¶12.

Plaintiff spends two pages in his response setting out the black-letter law pertaining to

various breach of warranty claims, including those never before asserted,[17] and offers only this

"evidence" for these claims:

(1) Dr. Rasty's expert opinion in which Dr. Rasty "questioned why the Delta-V thresholds (the force) experienced by the Subject Vehicle were not recorded by the ACM when they were more than sufficient to activate the occupant restraint system."  Doc. 238 at 25.

(2) the "implied promises made in the Defendant's Owner's Manual, that the seatbelt would hold an occupant in place (aided by the airbag when necessary), were, in fact, false.  *Id.*

This evidence falls short of creating a factual dispute on the breach of warranty claims.

First, aside from the fact that Dr. Rasty's opinion was based on a clear mischaracterization of Ms.

Fodale's testimony, the failure of the ACM to record the collision force has no connection with

any identified warranty—just as it has no connection to any allegation of manufacturing defect.

Second, Plaintiff refers to sections in the owner's manual describing general seatbelt

function, but none of the language is specific to the circumstances of the case (for example,

---

[17] Plaintiff's claims in his response that he also alleges a breach of the warranty of fitness for a particular purpose, although there is no semblance of such a claim either in his complaint nor in his discovery responses.  Doc. 238 at 11.

discussing certain collision force thresholds) or suggests that the seatbelt should have functioned

any differently that it did.  In fact, the manual specifically states that:

> Because air bag sensors measure vehicle deceleration over time, vehicle speed and
> damage by themselves are not good indicators of whether or not an air bag should
> have deployed.

Doc. 240-1 (Ex. L- owner's manual excerpt).

Not having presented any evidence to support the breach of warranty claims which create

a material factual dispute,[18] the Court finds that Defendant is entitled to summary judgment on

these claims as well.

## CONCLUSION

In sum, the Court finds and concludes that Defendant is entitled to summary judgment on

all of Plaintiff's claims in this case:

(1) Defendant is entitled to summary judgment on Plaintiff's marketing defect claim (to

the extent Plaintiff asserts this claim) because Plaintiff presents no evidence to support it;

(2) Without Dr. Rasty's Affidavit (which was stricken by the Court), Plaintiff is foreclosed

from asserting a design defect theory because he can present no expert testimony or opinion to

support that claim;

(3) Defendant is entitled to summary judgment on Plaintiff's manufacturing defect claim

because Plaintiff has failed to present any evidence regarding such a defect in the subject vehicle

that rendered it unreasonably dangerous, nor has Plaintiff offered any evidence to suggest that

such a defect (assuming that a defect exists) caused his alleged injuries;

---

[18] Defendant also seeks dismissal of the warranty claims based on lack of privity and the applicable statute of limitations.  The Court sees no reason to consider either, having determined the claims have no merit and because Plaintiff did not respond to either of those arguments in his response.

(4) Defendant is entitled to summary judgment on Plaintiff's various breach of warranty claims as a matter of law for failure to present evidence creating a material factual dispute on those claims.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Full and Final Summary Judgment **(Doc. 200)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order.

A Rule 58 Judgment shall be entered separately.

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE